# In the United States Court of Federal Claims

Nos. 13-402T, 13-917T, 13-935T, 13-972T, 14-47T, 14-93T, 14-174T, 14-175T

(Filed: February 8, 2016)

```
*************************************
                                     *
ALTA WIND I OWNER-LESSOR C, and      *
ALTA WIND I OWNER-LESSOR D, et al.,  *
                                     *   Section 1603 Recovery Act Claim
                 Plaintiffs,         *   for 30 Percent Energy Cash Grants;
                                     *   Defendant's Motion for Leave to
v.                                   *   Assert Counterclaims Based Upon
                                     *   Expert's Analysis; Effect on Scope
THE UNITED STATES,                   *   of Issues at Trial.
                                     *
                 Defendant.          *
                                     *
*************************************
```

*Steven J. Rosenbaum*, with whom were *Dennis B. Auerbach, Thomas R. Brugato,* and *Isaac Belfer*, Covington & Burling LLP, Washington, D.C., for Plaintiffs.

*Michael J. Ronickher*, with whom were *Caroline D. Ciraolo*, Acting Assistant Attorney General, *David I. Pincus*, Chief, *G. Robson Stewart*, Assistant Chief, *Miranda Bureau* and *Margaret E. Sheer*, Trial Attorneys, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for Defendant.

OPINION AND ORDER ON DEFENDANT'S MOTION
TO AMEND PLEADINGS TO ASSERT COUNTERCLAIMS

WHEELER, Judge.

These consolidated cases involve the determination of the cash grants due Plaintiffs for investing in wind power facilities in California. Under Section 1603 of the American Recovery and Reinvestment Act of 2009 ("Recovery Act"), Pub. L. No. 111-5, 123 Stat. 115, Plaintiffs are entitled to a 30 percent cash grant of the reasonable and allowable cost basis for the grant-eligible assets. The disputes center on establishing the proper cost basis for these assets. Plaintiffs' claims are for more than $200 million, which Plaintiffs say is

the cash shortfall between the actual cash basis of the power facilities and the amount that the U.S. Department of the Treasury ("Treasury") paid to them.

On December 16, 2015, Defendant filed a motion for leave to amend its answers by adding counterclaims based upon facts allegedly developed during discovery. Defendant attached each counterclaim to its motion for leave. In total, Defendant seeks almost $59 million in payments previously made to Plaintiffs. Defendant asserts that, not only should Plaintiffs' claims for $200 million in additional payments be denied, but also that the Treasury paid Plaintiffs $59 million too much which must be returned. Prior to filing the motion for leave, Defendant had contested Plaintiffs' claims for $200 million, but had not demanded the return of any funds previously paid.

On January 11, 2016, Plaintiffs opposed Defendant's motion, asserting that the purported counterclaims are untimely and prejudicial. Plaintiffs state that the facts on which Defendant's counterclaims are based were known to the Treasury in 2011 before the lawsuits were even filed, and were not learned for the first time during discovery. Fact discovery is now closed, expert reports have been exchanged, and a three-week trial is set to begin on May 9, 2016.

On January 27, 2016, Defendant filed a reply in support of its motion for leave. Defendant pointed out that it could not file any counterclaims until its expert witness, Dr. John Parsons, had completed his expert analysis and report. Dr. Parsons issued his expert report on October 23, 2015, and the parties exchanged rebuttal expert reports on December 4, 2015. Plaintiffs took Dr. Parsons' deposition after receiving notice of Defendant's counterclaims in the motion for leave. Defendant also asserts that the scope and issues of this case do not change because of the counterclaims. The Court must determine *de novo* the proper cost basis for the wind power facilities, regardless of whether the 30 percent cash grant is more or less than the amount Treasury previously paid to Plaintiffs.

A brief summary of the facts leading to these lawsuits is useful.[1] A company called Terra-Gen developed and constructed the Alta Wind facilities, and then sold them to Plaintiffs between December 2010 and May 2012. As allowed by law, Plaintiffs filed cash grant applications with the Treasury seeking payments of 30 percent of the amounts they paid to acquire the property from Terra-Gen. Plaintiffs supplemented their applications with thousands of pages of supporting documents, many of them requested by the Treasury to facilitate review. Each application contained an analysis certified by the KPMG accounting firm, allocating the purchase prices of the Alta Wind facilities between eligible and ineligible property.

The Treasury reviewed Plaintiffs' applications, and paid substantially less than what Plaintiffs had requested. Instead of basing the cash grant awards on Plaintiffs' purchase

---

[1] The facts described herein are taken from the parties' briefs on Defendant's motion for leave to amend, and are not in dispute.

prices to acquire eligible property from Terra-Gen, the Treasury based the awards on 30 percent of how much it had cost Terra-Gen to construct the eligible property.  The Treasury retained the National Renewable Energy Laboratory ("NREL") of the U.S. Department of Energy to review Plaintiffs' grant applications (as well as many other Section 1603 applications) and to make recommendations on the appropriate cost basis of eligible property.  For the Alta Wind I facility, for example, NREL prepared a 20-page Appraisal Review dated July 18, 2011, which was intended to be used by the Treasury in making a decision on the application for Section 1603 cash payments.

The NREL took the position in the Appraisal Review that three categories of indirect costs incurred by the seller in developing the facilities should be excluded.  The Treasury adopted the NREL's view that the seller's costs of construction should be the basis of the grant-eligible property, but it did not exclude the three categories of indirect costs in establishing the grant-eligible property.

The lawsuits began in June 2013, when Plaintiffs Alta Wind Owner-Lessor C and D filed a complaint alleging that the Government did not make the full payments owed to them under the Recovery Act.  Thereafter, from June 2013 through early March 2014, Plaintiffs' counsel filed seven similar complaints on behalf of other Alta Wind entities, and an entity called Mustang Hills, LLC.  In total, there are twenty Plaintiffs in these suits, and all of them acquired their ownership interests through sale-leaseback arrangements.  When Defendant filed answers to these complaints, it opposed Plaintiffs' claims, but did not assert any counterclaims.  Fact discovery occurred during a fourteen-month period from July 25, 2014 through September 18, 2015.  Expert discovery followed.

On October 23, 2015, the Government's expert, Dr. Parsons, issued his report which Plaintiffs say followed the NREL's July 2011 Appraisal Review.  However, Dr. Parsons concluded that the eligible cost bases for the Alta Wind facilities are lower than what the Treasury used in making its grant awards.   In effect, the three categories of indirect costs questioned in the NREL Appraisal Review now form the basis of Defendant's counterclaims.  As noted, Plaintiffs had the opportunity to depose Dr. Parsons after Defendant had provided notice of its intent to file counterclaims.

Having carefully considered the positions of the parties, and heard oral argument from counsel on February 4, 2016, the Court will grant Defendant's motion for leave and allow the counterclaims to be filed.  Rule 15 of the Court's rules provides that a party may amend its pleadings after an initial 21-day window "with the opposing party's consent or with the court's leave," RCFC 15(a)(1), and that the Court "should give leave when justice so requires," RCFC 15(a)(2).

Applicable case law holds that a motion for leave to amend may be denied where there has been undue delay in asserting the counterclaims. The timeliness of an amendment "is not decided in an absolute sense, but in light of the particular facts and history of the

case." King v. United States, 119 Fed. Cl. 51, 55 (2014). "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." 6 Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1488 (3d ed.); accord Brunner v. United States, No. 98-554C, 2007 WL 5177408 at *2 (Fed. Cl. Apr. 5, 2007) (leave to amend should be sought "at the earliest opportunity"). The Court also should consider whether there is any prejudice to the plaintiffs or the Court by the filing of the counterclaims. King, 119 Fed. Cl. at 53 ("to support a finding of prejudice, 'the delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court'"), citing Mayeaux v. La. Health Servs. & Indem. Co., 376 F.3d 420, 427 (5th Cir. 2004); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant . . . the leave sought to amend . . . should, as the rules require, be freely given.").

Here, in these *de novo* proceedings, Plaintiffs are faced with the rather obvious proposition that the Court's ultimate resolution of the cost basis issues could be greater than or less than the amount paid by the Treasury. If 30 percent of the cost basis is less than the Treasury's original determination, then Plaintiffs would be required to refund the amount of the overpayment. The fact that Defendant waited to assert counterclaims until its expert had completed his analysis was not an unreasonable approach. The Court will not impose upon Defendant an obligation to file protective counterclaims as a placeholder early in the case before it had formulated its overall position.

As importantly, the scope of the trial has not materially changed because of Defendant's filing of counterclaims after the close of discovery. The issue still to be decided is the proper amount of the cost basis of the wind power facilities. This was the issue before the assertion of the counterclaims, and it remains the issue after the assertion of the counterclaims. There is little if any prejudice to Plaintiffs resulting from the counterclaims, except to say that the stakes are raised somewhat because Plaintiffs have no guarantee of keeping the amounts that Treasury paid them. However, a refund always was a possibility given a proper understanding of the issues.

In order to eliminate any prejudice to Plaintiffs in now having to litigate the three categories of indirect costs that form the basis of Defendant's counterclaims, the Court will not permit Defendant to offer any document or related testimony into evidence to prove its counterclaims unless the document previously has been furnished to Plaintiffs. This restriction during trial should assure that the playing field is level even though Defendant moved to file its counterclaims after the close of discovery.

Accordingly, Defendant's motion for leave to amend its answers to assert counterclaims is GRANTED, and the Clerk shall allow the counterclaims attached to Defendant's motion to be filed.

5

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>THOMAS C. WHEELER<br>Judge