# In the United States Court of Federal Claims

Nos. 13-402, 13-917, 13-935, 13-972, 14-47, 14-93, 14-174, 14-175, 17-997 (consolidated)
(Filed: 18 June 2021)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ALTA WIND I OWNER LESSOR C, *et al.*, | * *  * |
| Plaintiffs, | * * |
| v. | * Supplement the Record; Remand; * Supplemental Expert Reports; RCFC 63; * Recalling Witnesses. |
| THE UNITED STATES, | * * |
| Defendant. | * * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Steven J. Rosenbaum*, with whom was *Dennis B. Auerbach*, and *Thomas R. Brugato*, Covington & Burling LLP, all of Washington, D.C., for plaintiffs.

*Bart D. Jeffress*, Trial Attorney, with whom were *Miranda Bureau*, Trial Attorney, *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, Department of Justice, all of Washington, D.C., for the defendant.

## OPINION AND ORDER

**HOLTE, Judge.**

Plaintiffs, owners of six wind farm facilities in southern California, allege the government underpaid them by over $200 million pursuant to § 1603 of the American Recovery and Reinvestment Act of 2009. The government filed a counterclaim, asserting it overpaid plaintiffs by over $59 million. Following a trial on the claims, the previously undersigned judge held for plaintiffs' claim of damages stemming from underpayment under § 1603. The Federal Circuit reversed, ruling the trial court improperly calculated the basis of the wind farms at the point plaintiffs purchased them and improperly excluded testimony by the government's expert. This case was transferred to the undersigned Judge on 29 July 2019. Following transfer of the case, the parties filed a joint motion for the resolution of pending discovery-related issues necessary to resolve before a second trial. The Court held oral argument on the parties' joint motion on 23 February 2021. For the following reasons, the Court **GRANTS** plaintiffs' request to supplement their expert reports, **GRANTS** plaintiffs' request to recall fact and expert witnesses pursuant to RCFC 63, **GRANTS** plaintiffs' request to submit a supplemental exhibit and **GRANTS** plaintiffs' request to submit supplemental transactional documents.

## I. Factual History[1]

Oak Creek Energy Systems ("Oak Creek") partnered with Allco Wind Energy Management Pt. Ltd. ("Allco") in 2006 "to finance, develop, and construct windfarms in the Tehachapi region of California." *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1370 (Fed. Cir. 2018). Oak Creek and Allco entered into a Master Power Purchase and Wind Project Development Agreement with Southern California Edison later that same year, providing "the Oak Creek/Allco subsidiary would develop multiple wind facilities . . . with all of that output to be sold to [Southern California Edison] for a period of roughly 24 years." *Alta Wind I Owner-Lessor C v. United States*, 128 Fed. Cl. 702, 709 (Fed. Cl. 2016). As part of this arrangement, Southern California Edison was to enter into separate power purchase agreements ("PPAs") with each individual windfarm. *Alta Wind I*, 897 F.3d at 1370.

By June 2008, Oak Creek and Allco had completed development work on the facilities ("the Alta Facilities") but had not begun construction. "Specifically, . . . they had (1) completed environmental studies; (2) secured key transmission and interconnection queue requests in the Tehachapi Renewable Transmission Project . . . (3) secured land rights; (4) begun the permitting process; (5) completed site analysis for turbines and other major equipment; (6) purchased GE turbines and executed turbine-related contracts; (7) constructed meteorological towers and collected wind data; and (8) secured the Master PPA with SCE." *Alta Wind I*, 128 Fed. Cl. at 709. Terra-Gen acquired Allco's U.S. wind energy business that same year and proceeded to "complet[e] the development and construction of the Alta Facilities" and execute Oak Creek and Allco's individual windfarm PPA contracts with Southern California Edison. *Alta Wind I Owner Lessor C*, 150 Fed. Cl. 152, 155 (Fed. Cl. 2020); *Alta Wind I*, 897 F.3d at 1370.

Congress enacted The American Recovery and Reinvestment Act ("ARRA") of 2009, Pub. L. No. 111-5, 123 Stat. 115, 364-66, as part of its efforts to strengthen the economy and invest in the nation's infrastructure. Section 1603 of the ARRA provides "a cash grant to entities that 'place[] in service' certain renewable energy facilities." *Alta Wind I*, 897 F.3d at 1367–68. The grant amount was determined "using the basis of the tangible personal property of the facility (with certain exclusions)." *Id.* at 1368 (citing § 1603(b)(1)). "Terra-Gen itself was not qualified to receive a section 1603 payment, as section 1603(g)(4) barred a 'pass-thru entity' from receiving a grant if any 'holder of an equity or profits interest' in the entity was a nonprofit, and Terra-Gen had some nonprofit equity holders." *Alta Wind I*, 897 F.3d at 1370.

Unable to receive the § 1603 grants, Terra-Gen proceeded to sell five of the windfarms (Altas I–V) to plaintiffs over a two-year period from 2010 to 2012. *Id.* at 1371. These sales were sale-leaseback transactions, whereby the windfarms were purchased and then leased back to Terra-Gen by the plaintiffs. *Id.* Terra-Gen sold a sixth facility outright to one of the plaintiffs in 2012. *Id.* "Plaintiffs appear to have placed each facility into service within weeks of its

---

[1] In May 2016, the previously assigned judge held a nine-day bench trial in this case and ruled in favor of plaintiffs. *See Alta Wind I Owner-Lessor C v. United States*, 128 Fed. Cl. 702, 706 (2016). The government appealed, and on 27 July 2018, the United States Court of Appeals for the Federal Circuit issued an opinion vacating this court's judgment and remanding the case. *See Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382–83 (Fed. Cir. 2018). A full recitation of the factual history can be found in these cases. The factual history in this Opinion and Order contains only those facts pertinent to the parties' joint motion for resolution of pending discovery-related issues.

acquisition" and proceeded to apply for over $703 million in grants through § 1603 "using the unallocated method to determine basis." *Id.* The Treasury Department required "companies applying for a section 1603 grant provide an opinion from an independent auditor validating the claimed grant-eligible costs," for which plaintiffs retained KPMG. *Id.* "KPMG certified that plaintiffs' allocations were fairly stated." *Id.* The Treasury Department ultimately awarded plaintiffs cash grants of approximately $495 million based on the costs of the facilities' grant-eligible construction and development, instead of plaintiffs' method of allocation using each facility's unallocated basis. *Alta Wind I*, 150 Fed. Cl. at 156.

"In June 2013, plaintiffs filed separate claims against the government, which were later consolidated, 'seeking over $206 million in additional section 1603 grants.'" *Id.* (quoting *Alta Wind I*, 897 F.3d at 1371. On 31 October 2016, the Court "awarded Plaintiffs damages in the amounts equal to the shortfall between the grant amounts to which Plaintiffs were entitled and the Government awarded." *Id.* at 722. The Federal Circuit vacated and remanded the case on appeal, holding the purchase prices paid for the Alta Facilities should be "allocated using the residual method" under I.R.C. § 1060. *Alta Wind I*, 897 F.3d at 1376.

## II. Procedural History

On 14 June 2013, plaintiffs filed separate complaints against the government. The complaints, later consolidated, allege the government underpaid plaintiffs pursuant to § 1603 grants. *See* Compl., ECF No. 1; Order, ECF No. 27; Order, ECF No. 196.[2] In December 2015, the government counterclaimed, alleging overpayment to plaintiffs in the amount of $58,884,366. Def.'s Mot. to Amend the Pleadings to Add Countercls. Based on Expert Op., ECF No. 75 at 10. The Court began a nine-day trial on 9 May 2016, and heard the testimony of eleven witnesses, including James Pagano, George Revock, Damon Huplosky, Anthony Johnston, Dr. Edward Maydew, and Dr. Colin Blaydon. *Alta Wind I*, 128 Fed. Cl. at 707. The Court excluded the government's expert, Dr. Parsons, from testifying during the trial after the previously undersigned judge concluded he "attempted to conceal articles he wrote for Marxist and East German publications" and "thereby provided untruthful testimony under oath to the Court." *Id.* On 24 October 2016, the previously undersigned judge found "the [g]overnment should have used [p]laintiffs' purchase prices, subject to reasonable allocations . . . as basis in calculating [p]laintiffs grants under Section 1603" and awarded plaintiffs $206,833,364. *Id.* at 722–24. The government appealed, and on 27 July 2018, the Federal Circuit reversed and remanded the case to this court. *Alta Wind I*, 897 F.3d at 1382–83. In remanding the case, the Federal Circuit stated "reassignment [of the case] is appropriate on remand" to "preserve the appearance of fairness." *Id.* (remanding the case for reassignment pursuant to RCFC 40.1). On remand, this court ordered the parties to submit simultaneous supplemental briefing and responses regarding "the issues of (1) whether the Federal Circuit's mandate requires us to hold an entirely new trial; [and] (2) whether any additional discovery in the form of supplemental expert reports is appropriate." Order, ECF No. 188. The parties submitted their simultaneous briefing on 9 November 2018 and simultaneous responses on 30 November 2018. *See*

---

[2] Two plaintiffs filed their initial complaints on 24 July 2017, and the cases were stayed pending appeal to the Federal Circuit of this case. *See Alta Wind I Owner Lessor A et al v. USA*, Case No. 17-997, ECF No. 1 (Fed. Cl. July 24, 2017). On 19 December 2018, this Court consolidated all plaintiffs under case number 13-402. Order, ECF No. 196.

Memorandum, ECF No. 190; Pls.' Brief Regarding Three Remand Issues, ECF No. 191; Response to Pls.' Memorandum, ECF No. 194; Pls.' Combined Response to Def.'s Brief Regarding Three Remand Issues, ECF No. 195.

On 29 July 2019, this case was reassigned to the undersigned Judge. *See* Order, ECF No. 197. The government filed a motion to dismiss for lack of subject matter jurisdiction on 21 January 2020, and the Court held oral argument on the government's motion on 17 July 2020. *See* Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support, ECF No. 208, Order, ECF No. 234. On 17 July 2020 the Court further ordered the parties to "file a joint motion for resolution of pending discovery-related issues" on or before 31 July 2020. *See* Order, ECF No. 240. The Court granted the parties an extension to file the joint motion on 27 July 2020. *See* Order, ECF No. 246. The parties filed their "Joint Motion for Resolution of Pending Discovery-Related Issues" on 4 August 2020. *See* Joint Mot. for Resolution of Pending Discovery-Related Issues, ECF No. 247 ("Joint Discovery Motion").

The Court held a status conference on the parties' joint motion on 2 September 2020. *See* Order, ECF No. 248. Following the status conference and by agreement from the parties, the Court ordered the parties to file supplemental briefs on the pending discovery-related issues on 26 October 2020 and simultaneously file supplemental response briefs on 16 November 2020. *See* Order, ECF No. 250. On 17 September 2020, the government filed a "Notice and Correction of Inadvertent Misstatement" with the Court related to comments made during the 2 September 2020 status conference.[3] *See* Notice and Correction of Inadvertent Misstatement, ECF No. 254. The Court denied the government's motion to dismiss on 21 October 2020. *See* Opinion and Order, ECF No. 264. The parties filed their respective supplemental briefs on 26 October and 16 November 2020. *See* Def.'s Supp. Br., ECF No. 266 ("Gov. Supp. Br."); Pls.' Supp. Br. on Remand Issues, ECF No. 267 ("Pls.' Supp. Br."); Def.'s Resp. Br., ECF No. 270 ("Gov. Resp. Br."); Pls.' Resp. in Supp. of Supp. Br. on Remand Issues ("Pls.' Resp. Br."), ECF No. 271. The Court held oral argument on the parties' joint motion on 23 February 2021. *See* Order, ECF No. 272; *see also* Transcript of Proceedings Held on February 23, 2021, ECF No. 274 ("Tr.").

## III. Parties' Arguments

On 17 July 2020, the Court ordered the parties to file a joint motion "detail[ing] all pending discovery-related issues/disputes and the parties' respective positions regarding resolution . . . ." Order, ECF No. 240. In their joint motion, the parties identified five pending discovery-related issues: (1) plaintiffs' request to submit a supplemental expert reports related to the Federal Circuit's *Alta Wind* decision; (2) the government's request to submit rebuttal expert reports if the Court allows plaintiffs to submit a supplemental expert report; (3) plaintiffs'

---

[3] The government's notice states its attorney of record "inadvertently misstated the procedural history of the *Yankee Atomic* case." Notice and Correction of Inadvertent Misstatement, ECF No. 254 at 1. The Rules of the Court of Federal Claims do not provide counsel the ability to file a "notice and correction" without the Court first granting a motion for leave to file the "correction." *See generally* the Rules of the United States Court of Federal Claims. The Court therefore strikes government counsel's "Notice and Correction of Inadvertent Misstatement" from the record. To the extent the government sought to correct the record, the *Yankee Atomic* case was fully discussed at oral argument on this motion. *See, e.g.* Tr. at 11:7–13. The government further had the opportunity at the conclusion of oral argument to discuss any cases it believed were mischaracterized in the briefing. Tr. at 147:20–159:3.

request to recall certain fact and expert witnesses pursuant to Rule 63 of the Rules of the United States Court of Federal Claims ("RCFC"); (4) plaintiffs' request to submit a supplemental exhibit ("the Pagano exhibit"); and (5) plaintiffs' request to submit new documents into the record related to Alta Wind Owner Lessors A & B. *See generally* Joint Discovery Motion; *see also* Transcript of Proceedings Held on September 2, 2020, ECF No. 252 ("Tr. II") at 8:19–9:8. At the Court's 2 September status conference on the joint motion, however, plaintiffs conceded there would be "no objection to the submission of rebuttal expert reports" if the Court allows supplemental expert reports. *See* Tr. at 45:23–46:6. The Court therefore considers only issues 1, 3, 4, and 5 identified in the joint motion as pending for resolution. *See, e.g.* Order, ECF No. 250 (scheduling supplemental briefing on four issues as: "[p]laintiffs' request to submit a supplemental exhibit ('the Pagano exhibit')"; "[p]laintiffs' request to submit new documents relating to Alta Wind Owner Lessors A & B"; "[p]laintiffs' request to submit a supplemental expert report"; and "fact and expert witnesses plaintiffs seek to recall under [RCFC] 63 . . . .").

## IV. Applicable Law

### A. A Trial Court Reopening the Record on Remand

"Absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration—whether on the existing record or with additional testimony or other evidence—to the sound discretion of the trial court." *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 948 F.2d 1573, 1577; *see also Adelson v. United States*, 782 F.2d 1010, 1012 (Fed. Cir. 1986) ("In remanding [the previous appellate decision in this case] for additional findings of fact, no limitation was placed on the Claims Court regarding whether the record could be reopened for additional receipt of evidence. Whether a trial court opens the proceedings on remand is a matter for its sound discretion."); *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir. 1998) (reaffirming "the general rule that, following appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion."). In *Exxon*, the Federal Circuit previously reversed the judgment of the district court on the question of whether the defendant's products literally infringed the patent and remanded the case without expressing a view on the question of whether the plaintiff was entitled to a new trial on infringement under the doctrine of equivalents. *Exxon Chemical Patents*, 137 F.3d at 1477. On remand, the trial court interpreted the Federal Circuit's mandate stating no reasonable jury could find literal infringement as precluding it from entertaining a motion for new trial on the issue of infringement under the doctrine of equivalents, and Exxon again appealed. *Id.* The Federal Circuit on the second review emphasized "an appellate mandate governs only that which was actually decided" and, although "[t]he exclusion of an explicit remand in the first *Exxon* opinion was correct as it pertained to the issue on appeal, i.e., literal infringement," "the judgment did not deprive the district court of authority to consider" anything "not . . . inconsistent with the mandate of the earlier opinion as gleaned from the judgment together with the accompanying opinion." *Id.* at 1478, 1484.

A trial court "enjoy[s] considerable discretion" in determining whether to reopen the record on remand to allow for supplemental expert reports to fulfill the appellate court's mandate. *Pacific Gas & Elec. Co. v. United States*, 668 F.3d 1346, 1351 (Fed. Cir. 2012). In

*Pacific Gas*, the Federal Circuit determined the Court of Federal Claims relied on an incorrect Annual Capacity Report ("ACR") to calculate the damages owed in a spent nuclear fuel case and remanded to provide the trial court "the opportunity to calculate the damages owed to PG&E for [the Department of Energy's] partial breach of the Standard Contract." *Id*. at 1349. Following remand, the Court of Federal Claims reconsidered certain previous mitigation damage awards in favor of plaintiffs. *Id*. at 1351. The government appealed, arguing the court erred "by interpreting [the Federal Circuit's] mandate to allow for reconsideration of PG&E's claims" for certain damages first presented at the initial trial. *Id*. The Federal Circuit noted the trial court had the discretion to hear the issue on remand, as "while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Id*. (quoting *Engel Indus., Inc. v. Lockformer Co*., 166 F.3d 1379, 1382 (Fed. Cir. 1999)). The Court of Federal Claims therefore "retained full discretion to revisit and reconsider" certain damages calculations before the Court at the first trial. *Id*. In the fulfillment of the Federal Circuit's mandate "to undertake a recalculation of damages consistent with the 1987 ACR, the trial court enjoyed broad discretion to allow the testimony of [plaintiff's] expert" which the trial court determined was "helpful to the court in its resolution of [the] case on remand." *Id*. at 1354 (internal quotation marks omitted).

In some instances, the Federal Circuit will remand a case with explicit instructions for the trial court. *See, e.g. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc*., 576 F.3d 1348, 1356 (Fed. Cir. 2009) ("[A]ccording to [the Federal Circuit's] explicit instructions, any new trial on remand was limited to an assessment of infringement and a calculation of any damages."). "Absent contrary instructions" to not reopen the record, however, a remand for reconsideration continues to "leave[] the precise manner of reconsideration—whether on the existing record or with additional testimony or other evidence—to the sound discretion of the trial court." *State Indus.*, 948 F.2d at 1577. *State Industries* involved the appeal of a decision by the trial court on remand to reopen the record for additional evidence as to whether willful infringement occurred. *Id*. at 1576. On the second appeal, the Federal Circuit noted the silence in its previous mandate regarding whether the trial court may reopen the record to hear new evidence should be understood to mean: "[w]hile [the Federal Circuit] did not explicitly *order* the court to conduct a new hearing, [it] certainly did not forbid it." *Id*. at 1577 (emphasis in original). The Federal Circuit in *State Indus*. went so far as to impose sanctions on the appellant in part for raising the argument on appeal for which "no basis for reversal in law or fact can be or is even arguably shown," noting the appellant "cannot point to any error in the trial court's decision to reopen the record, since our prior decision certainly allowed it to do so." *Id*. at 1578–79. The Federal Circuit has similarly noted a trial court's "wide discretion to permit the parties to supplement the record with new factual declarations" on remand in other contexts besides supplemental testimony. *Lexion Medical, LLC v. Northgate Technologies, Inc*., 641 F.3d 1352, 1358 (Fed. Cir. 2011) (noting the district court had discretion on remand to permit the parties to submit supplemental expert reports following the Federal Circuit vacating the construction of a patent claim term).

## B. Recalling of Fact Witnesses Under RCFC 63

Pursuant to RCFC 63, a judge conducting a hearing or trial on remand who did not preside over the original trial "must, at a party's request, recall any witness whose testimony is

material and disputed and who is available to testify again without undue burden." The parties do not cite to, and the Court is unaware of, any instance of this court or the Federal Circuit addressing a parties' request to recall fact and expert witnesses pursuant to RCFC 63. *See* Tr. at 103:20–25 (the government stating they "don't know of any" examples of cases of comparable facts where a Court denied plaintiffs the right to recall fact and expert witnesses under RCFC 63); Tr. at 104:8–19 (plaintiffs confirming they are "not aware of any cases where a [Court of Federal] Claims judge or the Federal Circuit has ruled [on] a [RCFC] 63 issue."). The Rules Committee Notes to RCFC 63 addressing the 2002 Revision to the rules notes, however, RCFC 63 "is essentially identical to [Federal Rules of Civil Procedure] 63." *See* Rules Committee Notes on RCFC 63, 2002 Revision.

Federal Rule of Civil Procedure ("FRCP") 63 "provides an opportunity to recall witnesses to any litigant who believes that the credibility of a particular witness is material to the accuracy of a successor judge's factual findings and that such credibility may be properly assessed only via new testimony." *Atlantic Specialty Insurance Company v. Coastal Environmental Group Inc.*, 945 F.3d 53, 65 (2nd Cir. 2019). The 1991 advisory committee note to FRCP 63 makes clear the rule "allows successor judges to make findings of fact based on evidence heard by a predecessor judge . . . only 'in limited circumstances,' such as when a witness has become unavailable or when the particular testimony is undisputed or immaterial." *Mergentime Corp. v. Washington Metropolitan Area Transit Authority*, 166 F.3d 1257, 1266 (D.C. Cir. 1999). The D.C. Circuit stated in *Mergentime*: "the only permissible reasons for not recalling witnesses when making fresh findings" are if the successor judge determines that a witness whom a party seeks to recall is either unavailable or their testimony is immaterial or undisputed. *Id*. Otherwise "a successor judge . . . would risk error to determine the credibility of a witness not seen or heard who is available to be recalled." *Id*. (internal quotation marks omitted).

## V. Plaintiffs' Request to Submit Supplemental Expert Reports

### A. Plaintiffs' Request to Submit Supplemental Expert Reports as an Exercise of the Court's Discretion

Plaintiffs "submit that the Court should allow the Parties to provide supplemental expert reports (no more than 35 pages total) to address issues raised by the Federal Circuit's opinion." Joint Discovery Motion at 2. Specifically, plaintiffs seek leave for their valuation expert, Professor Blaydon, to submit a supplemental expert report "recalculate[ing] [p]laintiffs' damages in the manner required by the Federal Circuit" and for their accounting expert, Professor Maydew, to submit a supplemental expert report "address[ing] a discrete tax issue that the Federal Circuit said should be resolved on remand." Pls.' Supp. Br. at 6.

First, plaintiffs argue the Court "should allow supplementation [of the expert reports] in the exercise of its discretion." *Id*. Pointing to this Court's "'broad discretion' on remand" to allow additional testimony or other evidence, plaintiffs argue the "proposed supplementation will be modest" and will allow their experts to "present[] a damage calculation conforming to the legal standards the Federal Circuit articulated." *Id*. at 7. Plaintiffs argue "allowing [Professor] Blaydon to supplement would be fully consistent with the Federal Circuit's mandate," and, rather

than seeking a "second bite at the apple," plaintiffs simply "seek to recalculate their damages claim." *Id*. at 11. According to plaintiffs, allowing supplementation would therefore "assist the Court in fulfilling [the Federal Circuit's] mandate by calculating the value of, and appropriate allocation to, the eligible tangible property in precisely the manner that the Federal Circuit required." *Id*.

Beyond allowance within this Court's discretion, plaintiffs argue in the alternative the Federal Circuit in *Alta Wind* "clarif[ied] legal standards central to the calculation of [p]laintiffs' damages" and, as a result, "justice requires" the Court permit Professor Blaydon to submit a supplemental expert report. *Id*. at 14. Plaintiffs claim "[b]efore the Federal Circuit ruled, the law was unclear on the threshold issue of whether IRC Section 1060 applies to transactions like the Alta sales" and, therefore, "the Federal Circuit clarified the law" on this and other issues related to "how the value of 'Class V' tangible assets must be calculated" and whether "a PPA may potentially be a separate intangible to which value may be attributed . . . ." Pls.' Supp. Br. at 14. Pointing in support to the Fifth Circuit case of *Brinley v. Commissioner* and First Circuit case of *Millipore Corp. v. Travelers Indem. Co.*, plaintiffs argue the alleged "clarifications" in the law mean "[j]ustice requires that [Professor Blaydon] be allowed" to supplement his expert report. *Id*. at 16.

The government argues it "would be improper for the Court to exercise its discretion to allow plaintiffs to disclose new expert reports," given the Federal Circuit's "focused mandate" and the fact "[p]laintiffs had ample opportunity to introduce at trial the expert evidence they now seek to offer on remand." Gov. Supp. Br. at 1. In support, the government presents cases it claims show a "trial court on remand does not abuse its discretion by declining to reopen the record for additional evidence, where a party had opportunity to introduce the evidence during trial," as well as appellate court cases in which the court "refuse[d] to remand cases for a new trial or additional evidence [because] a party had opportunity to offer the evidence at trial . . . ." *Id*. at 2–5 (citing *e.g.*, *Florida Power & Light Co. v. U.S.*, 103 Fed. Appx. 669, 671-73 (Fed. Cir. 2004)). The government further argues allowing supplemental expert reports would result in undue prejudice against it, as the supplemental expert reports "would require [the government] to expend substantial resources" in terms of "time attributable to the reports, including preparing for and taking depositions," and "expert fees and expenses . . . including for experts to prepare rebuttal reports, and to prepare and sit for depositions and trial examinations." *Id*. at 12.

The government further argues plaintiffs' reliance on cases such as *Brinley* is incorrect, as "an appellate court's use of a different standard or establishing of new legal principles does not justify new reports." *Id*. at 6. Pointing to the Federal Circuit's reliance on the plain language of statutes and regulations in *Alta Wind*, the government argues the Federal Circuit's holding was "not new" but rather based on statutes and regulations in force for years. *See id*. at 7–9. Even if the Federal Circuit did "establish[] new legal principles" as plaintiff asserts, the government argues it would not be sufficient to warrant supplemental expert reports. *Id*. at 6. Instead, the government states, "plaintiffs must show that they had no opportunity to offer evidence at trial to satisfy the standards the Federal Circuit later held apply." *Id*.

**1. Plaintiffs' Request to Submit Professor Blaydon's Supplemental Expert Report**

Contrary to the previously undersigned judge's conclusion that "no intangible assets were present," the Federal Circuit on appeal found "[a]lthough it may be that there was technically no goodwill at the time of the transaction . . . [an] expectation of goodwill was baked into each purchase price." *Alta Wind I*, 897 F.3d at 1373, 1375. The Federal Circuit also rejected the previous trial court's ruling the entire purchase price in excess of the development and construction costs of the tangible assets represented turnkey value,[4] instead stating turnkey value is "separate from the value that comes from having secured a customer contract, regulatory approvals, transmission rights, and [the] various other arrangements that ensured the immediate operation of the Alta windfarms" and directing this court to "distinguish between turn-key value and goodwill and other intangibles." *Id.* at 1377.

The Federal Circuit's *Alta Wind* decision rejected certain arguments raised by plaintiff and accepted by the court at the first trial that are "central to the calculation of damages," and plaintiffs seek to recalculate downward their damages estimate in a manner consistent with plaintiffs' valuation approach but "adjust[ed] . . . [to] appropriately exclude[] the value of intangible assets . . . which the Federal Circuit held must be treated as separate from the facilities' tangible assets." Pls.' Supp. Br. at 6, 8. This Court "enjoy[s] considerable discretion" in determining whether reopening the record on remand will assist the Court in fulfilling the Federal Circuit's mandate. *Pacific Gas & Elec. Co. v. United States*, 668 F.3d 1346, 1351 (Fed. Cir. 2012). The Federal Circuit in *Alta Wind I* reversed several assumptions made by the trial court in previously calculating the basis of the Alta Facilities, including: whether § 1060 applies to the transactions; whether the transaction prices include certain intangible assets such as the PPAs and transmission rights; and the proper allocation of assets among the seven asset classes under the residual method. *See Alta Wind I*, 897 F.3d at 1373–77. As plaintiffs note, the specific instructions for determining the proper basis of the Alta Facilities issued by the Federal Circuit in *Alta Wind I* "go to the heart of the question which will be addressed on remand, which is how . . . you determine the value of the tangible assets based upon this new guidance." Tr. at 65:4–7. The purchase prices of the Alta Facilities "must be allocated using the residual method" of § 1060 and include "a substantial portion of each purchase price being allocated to grant-ineligible assets," neither of which the trial court previously relied on to calculate plaintiffs' damages and both of which are represented by plaintiffs' proposed supplemental expert report. *See Alta Wind I*, 897 F.3d at 1372, 1376; *see also* Pls.' Supp. Br. at 8–10.

In remanding this case, the Federal Circuit instructed the Court "to make a factual determination as to the allocation of purchase price," a process which will include "applying the § 1060 residual method" and "distinguish[ing] between turn-key value and goodwill and other intangibles." *Alta Wind I*, 897 F.3d at 1377. The parties agreed at oral argument: "the Federal Circuit's mandate is for this Court to make necessary factual determinations as to the allocation of the purchase price of the Alta facilities." *See* Tr. at 21:25–22:1 (government counsel stating the Court's description of the mandate on remand is "exactly what the Federal Circuit said"); Tr. at 22:11–12 (plaintiffs "agree[ing] that that is the mandate"). The government also agreed, "[i]f

---

[4]  The turn-key value of an asset is "the incremental value 'a buyer would pay . . . for such an assurance that the plant and equipment would all work together without need of costly and time-consuming adjustments and coordination.'" *Alta Wind I*, 897 F.3d at 1377 (quoting *Miami Valley Broad Corp. v. United States*, 499 F.2d 677, 680 (Ct. Cl. 1974)).

the mandate does not say one way or the other whether to take new evidence or not to take new evidence . . . it is left to the sound discretion of the Court." Tr. at 19:19–23.  At oral argument the government further conceded the Federal Circuit's mandate "could have specifically instructed the Court to only reopen the record in order to allow Dr. Parsons," but instead the mandate doesn't "say one way or the other" whether the Court is barred from reopening the record for additional supplemental expert reports.  Tr. at 41:15–16; 53:10–14.

Plaintiffs state they wish to reopen the record "to recalculate their damages claim so that it conforms to the legal standards that the Federal Circuit articulated," a request they argue is "no different than what the court permitted in [*Pacific Gas & Electric*]."  Pls.' Supp. Br. at 11.  The government argues in response "it would be improper" for the Court "to allow plaintiffs to disclose new expert reports" because, the government claims, "[p]laintiffs had ample opportunity to introduce at trial the expert evidence they now seek to offer on remand."  Gov. Supp. Br. at 1.  When asked at oral argument whether the Federal Circuit in *Pacific Gas & Electric* made "any statements suggesting the question of whether plaintiffs had the opportunity to previously present evidence is a factor limiting the trial court's right to reopen the evidentiary record on remand," the government conceded "no[t] explicitly" but claimed the limiting factor is "there implicitly." Tr. at 62:20–63:18.

The government argues it would be an abuse of discretion to allow plaintiffs to submit supplemental expert reports because "[p]laintiffs' alternative argument [at the initial trial] actually anticipated every single thing the Federal Circuit did" and "whether the power purchase agreements were separate intangibles, whether goodwill existed, whether 1060 applied, whether the 1060 regulatory test could, under any circumstances, attach . . . were issues before discovery even started."  Tr. at 23:10–24:1.  According to the government, "the Golden Rule of law is you get one chance" and plaintiffs here are seeking "two bites at the apple."  Tr. at 27:13–19.  The government's briefs on plaintiffs' request for supplemental expert reports further argue allowing the supplemental expert reports would prejudice it because the reports "would require [the government] to expend substantial resources" in terms of attorney time, expert fees, and other expenses.[5]  *See* Gov. Supp. Br. at 12.  At oral argument the government also argued it would be prejudiced by plaintiffs' supplemental briefing because "[i]t's unduly prejudiced to continue to force the [g]overnment to litigate things that have already been litigated."  Tr. at 38:15–17. According to the government, "the goal of litigation is to get narrower," and prejudice would arise by allowing plaintiffs to present supplemental expert reports because such an action by the Court "would not be narrowing . . . [but rather] would be entering into a brand new case."  Tr. at 38:9–10, 39:7–9.  The government argued in the alternative, even if no prejudice existed, "prejudice to [the government] is entirely unnecessary to deny . . . the new evidence."  Tr. at 40:1–3.

---

[5]  The government specifically claims in its brief it would be prejudiced because its "attorneys would expend substantial time attributable to the reports, including preparing for and taking depositions, and preparing for and doing trial examinations."  Gov. Supp. Br. at 12.  The government further claims it "anticipate[s] that [its] attorneys would expend substantial time on all the work involved with rebuttal reports" and it would spend additional money on "expert fees and expenses [it] anticipate[s] as a result of the new reports . . . including for experts to prepare rebuttal reports, and to prepare and sit for depositions and trial examinations."  *Id.*

In its briefs and at oral argument, the government highlighted cases which it states show a trial court on remand does *not* abuse its discretion by refusing to take evidence that a party could have introduced during trial. *See* Gov. Supp. Br. at 2–5 (citing *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1345, 1346–47 (Fed. Cir. 2001) and *Florida Power & Light Co. v. U.S.,* 103 Fed. Appx. 669, 671–73 (Fed. Cir. 2004)). The government conceded at oral argument, however, cases such as *Tronzo* and *Florida Power & Light Co.*, "where a court found it was *not* an abuse of discretion to not reopen the record," are distinct situations from the question of whether it *is* an abuse of discretion to reopen the record on remand. *See* Tr. at 40:16–22 (emphasis added). When asked by the Court at oral argument, the government was unable to provide any examples of the Federal Circuit, or any other federal appellate court, concluding it was an abuse of discretion to reopen the record on remand absent contrary instructions in the appellate mandate. *See* Tr. at 40:4–14 (the government stating it doesn't know of any examples of cases where the Federal Circuit or another appellate court found it was an abuse of discretion to reopen the record on remand, absent explicit instructions to the contrary); 52:10–20 ("I think Your Honor asked me that before about whether can we point to a case where the Federal Circuit found an abuse of discretion in reopening the record, and I don't know of a case.").

Plaintiffs, in response, highlight several specific points in *Alta Wind I* where the Federal Circuit disagreed with the trial court in a way affecting the calculation of plaintiffs' damages and argue the Federal Circuit's reversal of conclusions reached by the trial court should not "somehow strip [plaintiffs] of the right to provide the Court the very thing the Federal Circuit has said it wants to have." Tr. at 31:16–32:1. As the Federal Circuit noted, the previously-undersigned judge "determined as a matter of law that § 1060 did not apply because no goodwill or going concern value could have attached" to the Alta Facilities and, therefore, "no intangible assets were present" for the purpose of calculating the basis of the facilities. *Alta Wind I*, 897 F.3d at 1373. Plaintiffs' supplemental expert report would apply the same discounted cash flow ("DCF") analysis as plaintiffs' original expert report in calculating the basis of the Alta facilities, but it would "adjust the DCF valuation so that it appropriately excludes the value of intangible assets . . . which the Federal Circuit held must be treated as separate from the facilities' tangible assets." Pls.' Supp. Br. at 8. The adjustment would result in Professor Blaydon "apply[ing] a higher discount rate than he used in his initial report," which in turn "will reduce the value of the eligible tangible assets, and thus reduce the amount of the grant to which [p]laintiffs are entitled." *Id*. The higher discount rate and, consequently, lower claim for damages, is proposed by plaintiffs' expert to "account for the risk that the facilities would not obtain the identified intangibles and thus capture the value of the tangible assets only, separate from the value of intangibles referenced by the Federal Circuit." *Id*. at 9. Unlike plaintiffs' expert report submitted prior to the Federal Circuit's *Alta Wind I* opinion, plaintiffs' proposed supplemental expert report would account for "goodwill and other intangibles" the Court must distinguish from grant-eligible tangible assets at a future trial. *Id*.; *Alta Wind I,* 897 F.3d at 1377.

The parties also agreed, if plaintiffs are permitted to file supplemental expert reports, the government may submit a rebuttal expert report. *See* Tr. at 6:24–7:9 (the parties agreeing, "if plaintiffs are allowed to submit the supplemental expert report . . . the [g]overnment should get a rebuttal report."). Other courts have concluded the opportunity of a party opposing the introduction of an expert report to "address the disputed opinion" at some later stage of the litigation means the introduction of an expert report would not result in prejudice. *See, e.g.*

*Hanover Insurance Co. v. United States*, 137 Fed. Cl. 479, 487 (2018); *Panasonic Communications Corp. of America v. United States*, 108 Fed. Cl. 412, 415–16 (2013) (refusing to allow an additional rebuttal report by the government in response to the plaintiff introducing new information its a rebuttal report because the government "will have the opportunity to challenge [p]laintiff's expert, and the . . . [expert's] methodology and conclusions, in deposition and in cross-examination at trial."). In *Hanover*, the Court of Federal Claims concluded the submission of an expert report by the plaintiff after the discovery deadline did not prejudice the government, because, "[t]o the extent [the government] may be prejudiced" by the late report, "the harm is easily cured by providing permission to [the government to] file a surrebuttal" to the late-filed expert report. *Hanover Insurance Co.*, 137 Fed. Cl. at 487. Here, as was the case in *Hanover*, the opportunity for the government to submit a rebuttal expert report in response to plaintiffs' supplemental expert report cures any prejudice the government might have otherwise experienced. *Id.*

This Court on remand must "make a factual determination as to the allocation of purchase price," taking into account how "goodwill and other intangibles" relate "to the allocation of [the] purchase price" of the Alta Facilities. *Alta Wind I*, 897 F.3d at 1377. Professor Blaydon's proposed supplemental expert report purports to take into account the grant-ineligible intangibles more accurately than the expert report plaintiffs submitted prior to the guidance provided by the Federal Circuit in *Alta Wind I*, and Professor Blaydon's proposed supplemental expert report is actually a lower damages calculation for plaintiffs. Pls.' Supp. Br. at 8–9. Allowing plaintiffs to submit Professor Blaydon's proposed supplemental expert report will provide the Court with a damages estimate more accurately reflecting plaintiffs' damages position following remand, and therefore will likely assist the Court in fulfilling the Federal Circuit's mandate. *Pacific Gas & Elec. Co.*, 668 F.3d at 1354. The parties have previously agreed, if the Court allows plaintiffs to submit supplemental expert reports, the government should have the opportunity to submit rebuttal expert reports. Tr. at 6:24–7:9. Other Court of Federal Claims judges have noted that providing the government an opportunity to file a rebuttal mitigates any prejudice that may have otherwise existed in providing plaintiff the opportunity to reopen the record. *See Hanover Insurance*, 137 Fed. Cl. at 487. Pursuant to the Court's "considerable discretion" in determining whether to reopen the record on remand, the Court finds rebuttal expert reports by the government will allow the government the opportunity to respond to Professor Blaydon's supplemental valuation and will likely assist the Court in fulfilling the Federal Circuit's mandate. *Pacific Gas & Elec. Co.*, 668 F.3d at 1351.

## 2. Plaintiff's Request to Submit Professor Maydew's Supplemental Expert Report

Plaintiffs further request the Court grant leave for their tax accounting expert, Professor Maydew, to submit "an even more modest supplemental report than [Professor] Blaydon's" addressing "a single issue that the Federal Circuit should be resolved on remand: whether the value of the Alta facilities' grant-eligible tangible assets should be deemed to include tax benefits like the value of the cash grant itself." Pls.' Supp. Br. at 17 (citing *Alta Wind I*, 897 F.3d at 1376 n.8). The government argues Professor Maydew should not be allowed to provide a supplemental expert report because "the proposed new 'expert' opinion . . . constitutes interpretation of law" and, according to the government, "[s]ince plaintiffs had full opportunity

at trial to offer to opinion they want Professor Maydew to give on remand and told the Federal Circuit and the [Court of Federal Claims] that he did give that opinion at trial, there is no basis for giving him another opportunity." Gov. Resp. Br. at 17, 18.

The Federal Circuit in *Alta Wind I* notes "[p]laintiffs argue that the portion of the purchase price attributable to the expected section 1603 grants and any associated indemnities are not separate from the value of the windfarms' tangible personal property," but states it "need not decide that issue in this appeal or decide whether the cash grant entitlement or associated indemnities are separate intangibles." *Alta Wind I*, 897 F.3d at 1383 n.8. Rather, the Federal Circuit explicitly "[left] these issues to the [Court of Federal Claims] on remand." *Id.*

This Court "enjoy[s] considerable discretion" in determining whether to allow a party to supplement the record on remand in support of it fulfilling the Federal Circuit's mandate. *Pacific Gas*, 668 F.3d at 1351. The Federal Circuit specifically included the question of whether cash grant entitlements are tangible or intangible property as a footnote related to the allocation of the purchase price among the various asset classes under the residual method. *Alta Wind I*, *Alta Wind I*, 897 F.3d at 1383 n.8. Professor Maydew's supplemental report on the cash grant entitlement may therefore be beneficial in fulfilling the Federal Circuit's mandate on remand. *See Pacific Gas*, 668 F.3d at 1354. To the extent the report contains legal conclusions inappropriate for an expert report, the government may note as such in its rebuttal report, and the Court will disregard the report where necessary. As addressed *supra*, the government will have opportunity to submit supplemental rebuttal expert reports on both Professor Blaydon and Professor Maydew's reports. The rebuttal expert reports will further mitigate any prejudice the government might otherwise experience by Professor Maydew submitting a supplemental expert report. *See Hanover Insurance*, 137 Fed. Cl. at 487.

## B. Allowance of Plaintiffs to Submit Supplemental Expert Reports

Allowing plaintiffs to supplement their expert reports will assist the Court in fulfilling the Federal Circuit's mandate by presenting the Court with a more accurate representation of plaintiffs' damages allegations following the Federal Circuit's reversal of several conclusions made by the previous judge. *See Pacific Gas*, 668 F.3d 1346, 1351 (Fed. Cir. 2012); *Lexion Medical, LLC v. Northgate Technologies, Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). As the Court grants leave for the parties to submit supplemental and rebuttal expert reports as an exercise of its inherent discretion, it does not need to reach the question of whether "justice requires" plaintiffs be granted the right to submit supplemental expert reports. Pls.' Supp. Br. at 16 (citing *Brinley v. Commissioner*, 782 F.2d 1326, 1336 (5th Cir. 1986)).

Plaintiffs are granted leave to file up to 35 pages, excluding exhibits, of supplemental expert reports by Professors Blaydon and Maydew. The parties have agreed, if plaintiffs are allowed to submit supplemental expert reports, the government may submit rebuttal expert reports. *See* Tr. at 6:24–7:9. The government may therefore submit up to 35 pages, excluding exhibits, of supplemental rebuttal expert reports in response to plaintiffs' supplemental expert reports.

## VI. Plaintiffs' Request to Recall Witnesses Pursuant to RCFC 63

### A. Plaintiffs' Arguments and the Government's Opposition to Plaintiffs' Request to Recall Witnesses

The Federal Circuit vacated and remanded this case "to the Chief Judge of the United States Court of Federal Claims for reassignment of the case" to a different judge than the one who presided over the first trial. *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382–83 (Fed. Cir. 2018). Plaintiffs "request to recall four fact and two expert witnesses" during the Court's trial on remand to establish the allocation of purchase price for the Alta facilities, emphasizing RCFC 63 directs that this Court "must . . . recall any witness whose testimony is material and disputed." Pls. Supp. Br. at 1. The government similarly acknowledged at oral argument, if the Court finds testimony from a witness plaintiffs seek to recall is material and disputed, "it is mandatory [for the Court] to recall the witness."[6] Tr. at 98:16–99:3.

Pursuant to RCFC 63, plaintiffs seek "to recall four fact and two expert witnesses" who testified at the first trial. Pls.' Supp. Br. at 1. These witnesses are: (1) James Pagano, Terra-Gen's Chief Executive Officer; (2) George Revock, a former Citibank employee who negotiated Citibank's purchases of Alta Wind facilities II-V; (3) Damon Huplosky, Terra-Gen's tax director; (4) Anthony Johnston, an audit partner at KPMG who managed the team that certified plaintiffs' grant applications; (5) Professor Blaydon, plaintiffs' valuation expert from Dartmouth University; and (6) Professor Maydew, plaintiffs' accounting expert from the University of North Carolina. Pls. Supp. Br. at 1–2. Plaintiffs provide six areas of testimony they argue the testimony of various recall witnesses is directly material to. *See Id*. at 2–6.

Plaintiffs argue the recalling of these six witnesses is required under RCFC 63, as the testimony of each is "material and disputed." *Id*. at 2. In support of the claim the testimony of each is disputed, plaintiffs point to the fact "the [g]overnment rejected 123 out of 165 proposed stipulations," despite, plaintiffs claim, the fact they "tried for months to reach stipulations to obviate the need for certain testimony." *Id*. The "material, disputed issues" plaintiffs claim the recall testimony will address include: (1) the reliability of the purchase prices; (2) the nature of the physical assets; how "real world buyers and sellers" value the assets; (4) the purported value of contracts; (5) alleged allocation flaws; and (6) alleged factual bases for the counterclaims. *Id*. at 2–6.

The government argues the majority of "the fact and expert testimony from the first trial that plaintiffs request be reheard is not material or is not disputed, and thus does not require recalling witnesses under RCFC 63." Joint Discovery Motion at 12. It claims the fact it "rejected many of [plaintiffs'] proposed stipulations" does not indicate the testimony is disputed, because, the government argues, "plaintiffs' stipulations so often were not supported by the evidence cited and other contained legal arguments or were misleading." Gov. Resp. Br. at 19. The government further argues various testimony is not "material," such as the "reliability of the purchase prices or whether they reflect the fair market value of the facilities as a whole . . . ." *Id*.

---

[6] When asked at oral argument whether "any witness is either unavailable or there would be an undue burden," the government simply responded "that's really a question for plaintiff" and noted "plaintiffs have said their witnesses are available." Tr. at 99:8–16.

(internal quotation marks and emphasis omitted). Finally, the government argues recall of Mr. Pagano and Mr. Revock is "improper" "because Mr. Pagano has not been qualified as an expert . . . and the [previous judge] already ruled Mr. Revock was not qualified as an expert and could only testify as a lay witness," and claims "any testimony about an allocation by KPMG within Class V is not recall testimony, but new testimony to which we object for failure of prior disclosure." Gov. Resp. Br. at 19–20. The "possible exception" to the government's arguments, it concedes, is Professor Blaydon. Joint Discovery Motion at 12. The government admits Professor Blaydon "is plaintiffs' valuation expert, [and] possible recall testimony, from him," may be appropriate. *Id.* In response to the Court's question at oral argument about the specific testimony plaintiffs seek to recall the government believes is not disputed, government counsel responded he was "sure there's some areas that are not disputed" and, while "there are some things that are undisputed," government counsel "[does not] have the list of them with" him. Tr. at 101:6–101:17.

The Court is unaware of any examples of the Court of Federal Claims or the Federal Circuit analyzing RCFC 63, and the parties were unable to provide any examples of such a case at oral argument. Tr. 103:20–104:19. The language of RCFC 63 is "essentially identical" to FRCP 63, and the Court looks to examples of Courts applying FRCP 63 as similar to instances of applying RCFC 63. *See* Rules Committee Notes on RCFC 63, 2002 Revision. The D.C. Circuit in *Mergentime* emphasized the "only permissible reasons for not recalling witnesses when making fresh findings" are when "a witness has become unavailable or when the particular testimony is undisputed or immaterial." *Mergentime Corp. v. Washington Metropolitan Area Transit Authority*, 166 F.3d 1257, 1266 (D.C. Cir. 1999). For a successor judge to otherwise make a finding would result in the successor judge "risk[ing] error to determine the credibility of a witness not seen or heard." *Id.* (internal quotation marks omitted).

As noted by the government, "Rule 63 is for rehearing [testimony from] the original trial, not for new things that have never been disclosed." Tr. at 93:17–21. When asked whether the testimony plaintiffs seek to recall "was exactly the same as the [testimony in the] first trial," plaintiffs represented the testimony "will be the same subjects" as was presented by the individual witnesses in the first trial and any new evidence plaintiffs propose to provide for the first time on remand would be "discuss[ed] separately" from plaintiffs' request to recall witnesses pursuant to RCFC 63. Tr. 94:15–95:11.

### 1. Plaintiffs' Request to Recall Witnesses on the "Reliability" of the Alta Wind Facilities Purchase Prices

Plaintiffs argue "a threshold disputed issue concerns the reliability of the purchase prices for the Alta facilities," a dispute "material because it determines what amount of consideration must be allocated between asset classes pursuant to IRC Section 1060" and "because it bears on the credibility of the valuation that the government proposes." Pls.' Supp. Br. at 1. Plaintiffs claim testimony they seek to recall from Mr. Pagano, Mr. Revock and Professor Blaydon will "concern[] the reliability of the Alta purchase prices." *Id.* at 3. The government argues in response the "'reliability' of purchase prices and whether they reflect the fair market value of the facilities as a whole are not material issues on remand, because the Court does not need to determine the fair market value of the facilities." Gov. Resp. Br. at 19 (emphasis omitted).

In *Alta Wind I*, the Federal Circuit observed "[t]he purchase prices for the Alta facilities were well in excess of their development and construction costs (i.e., book value) and the transactions involved numerous related agreements, such as the leasebacks to Terra-Gen and grant-related indemnities." *Alta Wind I*, 897 F.3d at 1373. The "existence of an excess of the total consideration over the aggregate book value of the tangible and intangible assets purchased" suggests a certain amount of "goodwill or going concern value" was included in the purchase price. *Id.* (quoting Treas. Reg. §1.1060-1(b)(2)(iii)(A)–(C)) (internal quotation marks omitted). The degree to which the total consideration for the Alta Facilities exceeded the aggregate book value of the tangible and intangible assets, and whether the price paid by plaintiffs for the facilities "reliably" captured the value of the Alta Facilities, is therefore potentially material to the question of the appropriate basis of the Alta Facilities under the residual method. Plaintiffs further highlight the government's valuation expert presented a valuation of the Alta Facilities' eligible assets at $1.64 billion, over a billion dollars less than the $2.66 billion plaintiffs paid in the transactions. Pls.' Supp. Br. at 2. The stark difference in valuations suggests the testimony on the "reliability" of the purchase price is disputed for the purpose of RCFC 63. Plaintiffs may therefore recall Mr. Pagano, Mr. Revock, and Professor Blaydon to testify on the "reliability" of the Alta Wind Facilities Purchase Prices. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266.

### 2. Plaintiffs' Request to Recall Witnesses on the Existence of Turnkey Value in the Alta Wind Facilities

Plaintiffs dispute the government expert's assertion "the physical assets that compromise the Alta facilities . . . can be readily replaced, can be valued discretely rather than as part of an integrated structure, and thus should be valued based on their separate replacement costs." Pls.' Supp. Br. at 3. Plaintiffs seek to recall Mr. Pagano and Mr. Revock to testify on the existence of a certain amount of turnkey value of the Alta facilities in response to the government expert's characterization. *Id.* at 3–4. The government argues the testimony is not material because "[p]laintiffs' assertion . . . that the nature of the assets justifies recall is misplaced" and the government's expert actually "is expected to offer an opinion of the value of the eligible property that allows for the turnkey value described in the Federal Circuit's opinion." Gov.'s Resp. Br. at 19; Resp. to Pls.' Mem., ECF No. 194 at 12.

The Federal Circuit instructed in *Alta Wind I* this Court, "[i]n applying the § 1060 residual method[,] . . . must distinguish between turn-key value and goodwill and other intangibles." *Alta Wind I*, 897 F.3d at 1377. Testimony on the nature of the assets valued and the role of turnkey value in determining the basis of the Alta Facilities are therefore directly material to the Federal Circuit's mandate. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266. The government expert's assertion as to the value of the physical assets, as well as the contrary testimony plaintiffs seek to recall, also support plaintiffs' assertion this testimony is disputed. Plaintiffs may therefore recall Mr. Pagano and Mr. Revock to testify on the existence of turnkey value in the Alta Wind Facilities. *Id.*

### 3. Plaintiffs' Request to Recall Witnesses on the Fair Market Value of Tangible Assets Related to the Alta Wind Facilities

Plaintiffs next seek to recall Mr. Pagano and Mr. Revock to testify "[h]ow real-world buyers and sellers assess value" for the purposes of determining the fair market value of the tangible assets. Pls.' Supp. Br. at 4. The government claims the "testimony is improper, because Mr. Pagano has not been qualified as an expert . . . and the [Court of Federal Claims] already ruled that Mr. Revock was not qualified as an expert and could only testify as a lay witness." Gov. Resp. Br. at 19.

Under the residual method of determining the proper allocation of purchase prices detailed by the Federal Circuit in *Alta Wind I*, this Court on remand must determine "the fair market value of the assets within each [asset] class." *Alta Wind I*, 897 F.3d at 1376. The testimony of Mr. Pagano and Mr. Revock on this subject relates to the appropriate fair market value of the income-producing assets of the Alta Facilities and therefore is material to the Federal Circuit's mandate. The government's adoption of a different final basis for the Alta Facilities further suggests testimony on the appropriate fair market value of the assets is disputed. Plaintiffs may therefore recall Mr. Pagano and Mr. Revock to testify on the fair market value of tangible assets related to the Alta Wind Facilities to the extent Mr. Pagano and Mr. Revock testified as lay witnesses on this subject at the first trial. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266. As agreed by plaintiffs, any witnesses recalled under RCFC 63 will only testify to "the same subjects" as they testified to at the first trial. Tr. at 94:15–21.

### 4. Plaintiffs' Request to Recall Witnesses on Whether Contracts Related to the Alta Wind Facilities have Above-Market Terms

Plaintiffs argue "[t]he Federal Circuit held that the tangible assets at the Alta facilities must be valued separately from the value of specified intangibles" such as contract rights, and therefore "[w]hether there are contracts that have value is relevant to ensuring that the tangible assets are appropriately valued separate and apart from any contract value." Pls.' Supp. Br. at 4 (emphasis omitted). Plaintiffs seek to recall Mr. Pagano, Mr. Huplosky, and Mr. Revock to "testify that the Alta contracts do not have above-market terms." *Id*. at 5 (emphasis omitted). The government argues in response "the Federal Circuit's conclusions [in *Alta Wind I*] do not require additional testimony or evidence because the Federal Circuit did not direct this Court to find a separate value for each of the [contracts] in order to determine the plaintiffs' basis in eligible property," but rather "what is relevant is the value of tangible, eligible assets—assets included in Class V under the residual method." Resp. to Pls.' Mem., ECF No. 194 at 15.

In examining the purchase price of the Alta Facilities, Federal Circuit noted "[t]here is no dispute that . . . [t]he purchase prices . . . were well in excess of their development and construction costs." *Alta Wind I*, 897 F.3d at 1373. The government "argues that the transactions included numerous intangible assets, such as the [contracts]," and the Federal Circuit concluded "at least some intangible assets were present in the Alta transactions." *Id*. at 1374. Although the government is correct the Federal Circuit did not explicitly "direct this Court to find a separate value for each of the [contracts]," determining whether the contracts have value will assist the Court in determining the portion of the purchase price allocated to the tangible assets by clarifying whether any of the additional value "in excess" of the development and construction costs can be attributed to the contracts. The testimony is therefore material to the

Court's analysis of the value of the tangible assets separate from any value of the contracts. The government has previously rejected proposed stipulations addressing this issue, and the government did not concede the issue of the value of the contracts as undisputed in the supplemental briefing or at oral argument. *See generally* Gov. Supp. Br.; Gov. Resp. Br; Tr.. The Court therefore concludes the testimony is disputed, and plaintiffs may recall Mr. Pagano, Mr. Huplosky, and Mr. Revock to testify on whether contracts related to the Alta Wind Facilities have above-market terms. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266.

### 5. Plaintiffs' Request to Recall Witnesses on Whether Plaintiffs' Allocation of Grant-Eligible and Non-Grant-Eligible Assets was Accurate

Plaintiffs seek to recall Mr. Johnston, Mr. Huplosky, and Professor Maydew in response to the government's argument KPMG's "allocat[ion] among [grant-eligible and non-grant-eligible] assets pro rata based on relative construction costs" "was [r]iddled with [i]naccuracies and [f]atal [f]laws." Pls.' Supp. Br. at 5 (internal quotation marks omitted). The government claims plaintiffs' argument "is meritless . . . because KPMG did not allocate the purchase prices under the residual method of § 1060 . . . ." Gov. Resp. Br. at 19. The government further argues "any testimony about an allocation by KPMG . . . is not recall testimony, but new testimony to which we object for failure of prior disclosure . . . ." *Id.* at 20 (emphasis omitted).

The parties disagree in the supplemental briefing whether KPMG conducted an allocation of grant-eligible tangible assets within Asset Class V. *See* Pls.' Supp. Br. at 5 ("KPMG assisted [p]laintiffs in allocating the Alta purchase prices between tangible assets that are grant-eligible . . . and those that are not . . . among eligible and ineligible assets [within a single asset class (Class V)]."); Gov. Resp. Br. at 20 ("KPMG did not do an allocation within Class V (and plaintiffs fail to cite any evidence of one)"). At oral argument, the parties further disagreed about whether KPMG conducted an allocation within asset Class V. *See* Tr. at 105:3–8 (plaintiffs expressing KPMG "absolutely performed such an allocation"); Tr. at 107:19–24 (the government arguing "KPMG did not allocate purchase prices under 1060, and this is the very first time . . . where plaintiffs claim that KPMG did a pro rata allocation among eligible and ineligible assets within a single class, Class V."). The questions of whether KPMG allocated purchase prices between grant-eligible and grant-ineligible assets within Asset Class V, as well as the accuracy of such allocations, are material to determining the allocation of tangible and intangible assets among the seven asset classes detailing in *Alta Wind I. Alta Wind I*, 897 F.3d at 1376. The continued disputes in the briefing and at oral argument regarding what kind of review KPMG actually performed and the accuracy of any such review show testimony related to these allocations is disputed. Plaintiffs may therefore recall Mr. Johnston, Mr. Huplosky, and Professor Maydew to testify on whether plaintiffs' allocation of grant-eligible and non-grant-eligible assets was accurate. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266. As with other testimony recalled pursuant to RCFC 63, the recalled witnesses will only be permitted to testify to "the same subjects" on KPMG's allocation as was permitted at the first trial. Tr. at 94:15–21.

### 6. Plaintiffs' Request to Recall Witnesses on Whether Interest Paid on Loans and Other Related Costs Were Appropriately Capitalized

Plaintiffs seek to recall Mr. Pagano, Mr. Huplosky, and Professor Maydew to testify how "interest Terra-Gen paid on loans necessary to finance construction of the facilities" and other related costs "related to the construction of eligible, tangible assets" were "appropriately capitalized into those assets under Section 263A." Pls.' Supp. Br. at 6. Plaintiffs also seek to recall the witnesses to testify "that other costs treated by the [g]overnment as ineligible (e.g., costs to acquire wind data necessary to appropriately locate and orient the wind turbines) related to the construction of eligible, tangible assets were thus appropriately capitalized into those assets under Section 263A. *Id.* The government claims this testimony is not material because "the Court's task is to determine the plaintiffs' cost basis, as the buyers and applicants for the Section 1603 payment, not Terra-Gen's cost basis." Resp. to Pls.' Mem., ECF No. 194 at 19.

The Federal Circuit remanded this case "to determine the proper allocation of the purchase prices" among the seven asset classes of the residual method of calculating basis. *Alta Wind I*, 897 F.3d at 1376. Testimony on whether certain costs were appropriately capitalized into tangible assets, or, as the government argues, are ineligible to be included in any of the classes for tangible assets, is therefore material to the question of the proper allocation of the purchase prices and a determination of whether the certain aforementioned costs were capitalized into the assets in a way affecting the purchase prices of the Alta Facilities. The witnesses plaintiffs seek to recall each testified on this subject at the previous trial. *See* Pls.' Supp. Br. at 6. To the extent the government believes the recall testimony on the subject does not relate to plaintiffs' cost basis, it may raise such arguments at the second trial. The ongoing dispute in the briefing regarding whether these costs are grant-ineligible or were appropriately capitalized further shows the testimony is disputed. Plaintiffs may therefore recall Mr. Pagano, Mr. Huplosky, and Professor Maydew to testify on whether interest paid on the loans and other related costs were appropriately capitalized. *See* RCFC 63; *Mergentime*, 166 F.3d at 1266.

## B. Allowance of Plaintiffs to Recall All Six Fact Witnesses

The Court concludes all of the witnesses plaintiffs seek to recall will provide testimony at trial which is material and disputed, and all of the witnesses are available to testify again without undue burden.[7] Pursuant to RCFC 63, the Court must therefore allow plaintiffs to recall the following witnesses at a future trial: James Pagano, George Revock, Damon Huplosky, Anthony

---

[7] On 3 September 2020, the Court ordered the parties to "file supplemental briefs regarding the pending discovery disputes prior to oral argument on the[] issues." Order, ECF No. 250 at 1. The supplemental briefs were to address the "four pending discovery-related issues before the Court," including "[t]he specific list of fact and expert witnesses plaintiffs seek to recall under Rule 63 of the Rules of the Court of Federal Claims, the testimony plaintiffs seek to recall, and whether or not the testimony may be recalled under Rule 63, supplementing briefing . . . from November 2018." *Id.* The government did not brief the Rule 63 dispute in its initial supplemental brief, presenting its argument only in its response brief. *See* Gov. Supp. Br.; Gov. Resp. Br. at 18–20. Plaintiffs argue in their response brief "[t]he [g]overnment's failure to address Rule 63 in its opening brief has improperly deprived [p]laintiffs of any ability to respond," and, therefore, "[a]ny Rule 63 arguments advanced by the [g]overnment in its reply should be stricken." Pls.' Resp. Br. at 20. At oral argument, government counsel stated he "[does] not read [the Court's language on briefing the issue of recalling witnesses pursuant to Rule 63] as applying to" the government. Tr. at 87:17–21. Plaintiffs originally provided a list of witnesses they sought to recall in briefing on the issue filed in 2018. *See* Pls.' Br. Regarding Three Remand Issues, ECF No. 191. As the Court finds all of the witnesses plaintiffs seek to recall will provide testimony at trial which is material and disputed, the Court need not reach the question of whether the government's lack of arguments on Rule 63 in the initial supplemental brief improperly deprived plaintiffs of the opportunity to respond in the simultaneous response briefs.

Johnston, Colin Blaydon, and Edward Maydew.  The government may object to any testimony it believes is inappropriate for a fact witness or was not presented at the first trial during the second trial.

## VII.  Plaintiffs' Request to Submit the Supplemental "Pagano Exhibit"

### A.  Plaintiffs' Arguments and the Government's Opposition to Plaintiffs' Request to Submit the Supplemental Pagano Exhibit

Plaintiffs request permission at retrial "to present a supplemental exhibit to be sponsored by James Pagano, a [p]laintiff witness at the first trial, subject to any valid evidentiary objections [the government] may have."  Joint Discovery Motion at 3.  Plaintiffs describe the Pagano exhibit as "illustrat[ing] in table form and provid[ing] additional detail about a subject that was already the subject of fact discovery and trial testimony:  the financial implications to Terra-Gen of selling the Alta facilities to Plaintiffs, versus Terra-Gen maintaining ownership."  Pls.' Supp. Br. at 18.  The exhibit would be used by plaintiffs to "demonstrate[] . . . that the [Alta Wind facility] sales were not undertaken either to unfairly benefit Terra-Gen or unfairly burden the [g]overnment, and . . . illustrate[] why both tax benefits and tax detriments must be considered in valuing an asset."  *Id.* at 18–19.  Plaintiffs argued at oral argument the Pagano exhibit is offered "to establish two points":  (1) the sale of the Alta Facilities by Terra-Gen to plaintiffs "[being] not for the purpose of unfairly benefiting Terra-Gen or unfairly burdening the Government"; and (2) "to help answer[] the question whether it's appropriate to include the cash grant as part of the value of the tangible assets," which plaintiffs argue "is one of the questions that the Federal Circuit flagged as one that this Court will need to address on remand."[8]  Tr. at 113:14–24.

The government opposes plaintiffs' request to reopen the record to include the Pagano exhibit, arguing plaintiffs "concede that they had full opportunity to offer the exhibit at trial" and to reopen the record would prejudice the government by requiring it to "expend significant resources throughout the rest of this litigation to address it."  Gov. Supp. Br. at 17.  The government further argued at oral argument the Court should not allow plaintiffs to submit the Pagano exhibit because plaintiffs "have offered no excuse for why they failed to present it previously," because the Federal Circuit didn't "show any interest in . . . the tax consequences from the hypothetical of maintaining ownership versus selling the wind farms," and because "the exhibit is grossly misleading" for "making claims about how much revenue the Government collected from these sales and claiming that because the Government collected that revenue, it offset the increased 1603 grant that was achieved by jacking up the purchase prices."  Tr. at 114:15–115:11.  In response to the government's criticism of the veracity of the exhibit, plaintiffs note much of the government's criticism of the Pagano exhibit goes to the "weight [that] should be given to this evidence" and should be addressed in post-retrial briefing, rather than serve as a ground to reject the exhibit completely.  Tr. at 117:1–5.  In the event the Court reopened the record to include the Pagano exhibit, the government "request[s] a fair opportunity

---

[8] When asked why plaintiffs sought to include the Pagano exhibit now, when it was not included at trial, plaintiffs explained they believe "the Federal Circuit decision . . . by emphasizing the question of the proper treatment of the cash grant in determining the value of tangible assets . . . focused attention on this issue, and that's why [plaintiffs are] seeking to do this."  Tr. 116:20–117:1.

to take related fact discovery" on the ground "[f]airness requires that, pursuant to the RCFC and ordinary course of litigation, [the government] be permitted to discover all documents and testimony . . . ." Gov. Supp. Br. at 19.

Absent contrary instructions by the Federal Circuit, this Court has the discretion to reopen the record on remand for the receipt of additional evidence. *See Adelson v. United* States, 782 F.2d 1010, 1012 (Fed. Cir. 1986) ("Whether a trial court opens the proceedings on remand is a matter for its sound discretion."); *Exxon Chemical Patents, Inc. v. Lubrizol Corp*., 137 F.3d 1475, 1484 (Fed. Cir. 1998) ("[F]ollowing appellate disposition, a district court is free to take any action that is consistent with the appellate mandate . . . ."). The Pagano exhibit may assist the Court in determining on remand how to treat a potential cash grant as part of the value of the tangible assets used to determine the basis of the Alta Facilities. *Alta Wind I*, 897 F.3d at 1376; *see also id*. at 1376 n.8 ("We need not decide . . . whether the cash grant entitlement or associated indemnities are separate intangibles. We leave these issues to the [Court of Federal Claims] on remand."). The Court concludes the introduction of the Pagano exhibit into the record may be useful to resolve the Federal Circuit's mandate on remand and will allow plaintiffs to enter it into the record. *Exxon Chemical Patents*, 137 F.3d at 1484.

The government requests, if the Court allows plaintiffs to enter the Pagano exhibit into the record, "a fair opportunity to take related fact discovery." Gov. Supp. Br. at 19. The government argues "plaintiffs are making the equivalent of an initial disclosure" and, therefore, "[f]airness requires that, pursuant to the RCFC and ordinary course of litigation, [the government is] permitted to discover all documents and testimony (from all relevant witnesses)." *Id*. Plaintiffs consent to the government deposing Mr. Pagano, but argue in their briefing "[f]urther discovery [into the Pagano exhibit] should be allowed only if the [g]overnment is able to show a need for it after Mr. Pagano is deposed." Pls.' Resp. Br. at 20. At oral argument, plaintiffs further represented they "don't object to" the government receiving all documents relied on to produce the Pagano exhibit "because [the government] already [has] them all." Tr. at 120:13– 23. The government responded that all documents in its possession are not enough to allow the Pagano exhibit issues to be resolved by deposition of Mr. Pagano, as the government believes it "need[s] to be able to prepare" and although it has "a whole ton of documents, [] the exhibit does not [c]ite to any." Tr. at 121:7–9. The government proposed plaintiffs "can just redo the exhibit and annotate it with all of the documents they're relying on," as "[i]f [the government] already [has] them, then it's easy." Tr. 121:10–12. Plaintiffs responded they "would be happy to provide promptly an annotated version" of the Pagano exhibit, and "will provide both the citation to the document, and . . . a citation to the record where the numbers appear in the record." Tr. 121:18–23.

Plaintiffs represented all documents Mr. Pagano relied upon in creating his exhibit are already in the record, and an annotated exhibit showing the specific source of each piece of information will allow the government to confirm it has every document Mr. Pagano relied upon to create the exhibit. Tr. 120:13–23. Plaintiffs also consented to the government deposing Mr. Pagano on the subject of the exhibit. *See* Pls.' Supp. Br. at 19 ("Plaintiffs do not object to the Government taking Pagano's deposition regarding the Pagano exhibit."). The annotated exhibit and opportunity to depose Mr. Pagano on the subject of the exhibit will mitigate any prejudice

the government may have otherwise experienced by admitting the exhibit into the record. The government may demonstrate more discovery into the exhibit is necessary at a later date.

### B. Allowance of Plaintiffs to Submit the Supplemental Pagano Exhibit

The Court will allow plaintiffs to enter the Pagano exhibit into the record pursuant to the Court's discretion to receive additional evidence that may be beneficial to resolving the Federal Circuit's mandate. *See, e.g. Adelson*, 782 F.2d at 1012; *Exxon Chemical Patents*, 137 F.3d 1484. Plaintiffs will provide the government an annotated copy of the exhibit citing the documents relied upon to create the exhibit, and the government may depose Mr. Pagano on the subject of the exhibit.[9]

## VIII. Plaintiffs' Request to Submit New Documents Relating to Owner Lessors A & B

Plaintiffs "seek to introduce into evidence . . . transactional documents" related to two owners of the Alta Wind I facility, Owner Lessors A and B, for the stated "purpose of ensuring that the Court has before it the complete set of transactional documents for the Alta Wind I transaction." Joint Discovery Motion at 5. Owner Lessors A and B's action to recover their cash-grant underpayment was consolidated with the lawsuit brought by co-owners of the Alta Wind I Facility Owner Lessor C and Owner Lessor D for retrial.[10] Pls.' Supp. Br. at 19–20. Plaintiffs argue the documents are "substantively identical to those already admitted into evidence for Owner Lessors C & D" and are being offered "to ensure that the Court has before it the complete set of transactional documents for the Alta Wind I transaction." *Id.* at 20. Plaintiffs further oppose the Court "reopen[ing] discovery on account of these documents," arguing they are "substantively identical to those already admitted into evidence for Owner Lessors C & D" and "the [g]overnment has already taken discovery of these materials."[11] *Id.* (emphasis omitted).

The government opposes plaintiffs' request to admit the set of 35 documents related to Alta Wind Owner Lessors A & B, arguing: "[it] is incomplete because it does not include all documents that implement the cash grant shortfall/indemnification provisions, including unredacted copies of the agreements produced at trial . . . and corresponding unredacted agreements for A&B." Gov. Supp. Br. at 20. Without those documents, the government states it "cannot address the scope of necessary discovery." *Id.* Plaintiffs respond the government "has

---

[9] The government argued at oral argument the opportunity to depose Mr. Pagano on the subject of the exhibit and an annotated exhibit showing the documents relied on to create the exhibit do not constitute sufficient discovery, but rather is merely "like an initial disclosure." Tr. at 122:19–21. In addition to the deposition and annotated exhibit, the government claims it will seek discovery of plaintiffs' and Terra-Gen's tax returns and will seek to "issue third-party subpoenas to some of the direct and indirect partners," "issue non-party subpoenas," and "issue document requests." Tr. at 123:2–124:8. To the extent the government believes additional discovery beyond a deposition of Mr. Pagano and the annotated exhibit are necessary, it may file a motion for additional discovery at a later date.

[10] The Alta Winds I facility has multiple owners, named owners A, B, C, and D. Tr. at 125:22–23. Owner C and Owner D of the Alta Winds I facility participated in the first trial, but Owner A and Owner B did not. Id. at 125:23–25. Since the conclusion of the first trial, the parties have stipulated Owner A and Owner B will participate in the retrial. *Id*. at 126:3–5.

[11] Plaintiffs specifically claim "[a]ll but six of the 35 documents were produced by [p]laintiffs in discovery in the original litigation," and characterize "[t]he six documents not produced in discovery [as] ministerial, two-page certificates (one of which is a signature page)." Pls.' Supp. Br. at 20.

not even tried to explain why the agreements are relevant to the admission of the Alta Wind I A & B transactional documents." Pls.' Resp. Br. at 20.

The Court "enjoy[s] considerable discretion" in determining whether to reopen the record to allow additional evidence on remand. *Pacific Gas*, 668 F.3d at 1351. As plaintiffs noted at oral argument, Alta Wind I Owner Lessors A & B were not before the court during the first trial but rather were consolidated with this case following the trial's conclusion. Tr. 130:12–14; *see also* Order Denying Mot. to Consolidate Cases[12] (consolidating *Alta Wind I Owner-Lessor A, et al.* with *Alta Wind I Owner-Lessor C, et al.*). Plaintiffs did not have the opportunity to include the transactional documents at issue in the record prior to the first trial, and previously included substantively identical documents for Alta Wind I Owner Lessors C & D. Allowing plaintiffs to supplement the record with nearly-identical transactional documents of two owners of the Alta Wind I facility who were not before the Court at the previous trial will result in a more complete record before the Court as it holds a second trial and will therefore assist in the Court fulfilling the Federal Circuit's mandate. *Pacific Gas*, 668 F.3d at 1351.

At oral argument, the government clarified its primary concern regarding the admission of the documents relating to Owner Lessors A & B is that "plaintiffs are trying to cherry-pick the transactional documents they want to put in the record and keep back the ones they don't," which the government does not believe is fair because the record "should be complete." Tr. at 129:11–15; *see also* Tr. 128:25–129:5 ("The bottom line is we think the unredacted copies of the indemnification agreements are part of the transactional documents because the ones that are in the record that they gave us . . . are heavily redacted . . . ."). Plaintiffs claim the redacted information is privileged and are willing to "file a privilege log that claimed [the] redactions are privileged." Tr. at 143:2–4. Plaintiffs are directed to provide the government with either the unredacted documents, a privilege log detailing each redaction, or some combination thereof. This will provide the government the opportunity to determine if any additional discovery into the documents is necessary and mitigate any potential prejudice to the government associated with allowing the transactional documents into the record. *See* Rule 26(b)(5) of the Rules of the United States Court of Federal Claims (describing the requirements of a privilege log).

## IX. Conclusion[13]

---

[12] Although the Order is titled "Order Denying Motion to Consolidate Cases," it actually grants-in-part and denies-in-part plaintiffs' motion to consolidate three cases, *Alta Wind I Owner-Lessor C, et al.*, *Alta Wind I Owner-Lessor A, et al.* and *Alta Wind VIII*. Only *Alta Wind VIII* was not consolidated with the other *Alta Wind* cases.

[13] At the conclusion of the oral argument on the parties joint motion, government counsel requested the opportunity to address on the record what he believes to be "mischaracterizations of the case law in the most recent brief by plaintiffs." Tr. at 147:20–25. Government counsel argues plaintiffs first micharacterize *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001) by "ignoring" the fact "on remand, the trial court declined to open the record, and it did so because [the trial court] said that competent counsel made strategic decisions." *Id.* at 150:4–6. Second, government counsel argues plaintiffs mischaracterize *Hennessy v. Schmidt*, 583 F.2d 302 (7th Cir. 1978) by not representing the appellate court reversed the trial court for applying the incorrect legal test to determine proximate cause. *Id.* at 152:13–18. Third, government counsel claims plaintiffs ignore portions of the opinion in *EEOC v. Westinghouse Electric Corp.*, 925 F.2d 619 (3d Cir. 1991) where the Third Circuit states the Supreme Court's decision in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158 (1989) changed the standard courts in the circuit previously applied. *Id.* at 153:13–154:3. Fourth, government counsel similarly accuses plaintiffs of doing "the same thing" with *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278 (5th Cir. 1999) by

For the forgoing reasons, the Court **GRANTS** plaintiffs' request to supplement their expert reports as an exercise of its discretion.  Plaintiffs may file up to 35 pages, excluding exhibits, of supplemental expert reports by Professors Blaydon and Maydew.  As previously agreed by counsel, the government may submit up to 35 pages, excluding exhibits, of supplemental rebuttal expert reports in response to plaintiffs' supplemental expert report.  The Court further **GRANTS** plaintiffs request to recall fact and expert witnesses pursuant to RCFC 63.  Plaintiffs may recall the following fact and expert witnesses to provide the same or similar testimony as they did in the first trial:  James Pagano, George Revock, Damon Huplosky, Anthony Johnston, Colin Blaydon, and Edward Maydew.  The Court **GRANTS** plaintiffs request to submit the supplemental Pagano exhibit to the record.  Plaintiffs shall provide the government with an annotated copy of the exhibit citing the documents relied on to create the exhibit, and the government may depose Mr. Pagano on the exhibit.  The Court **GRANTS** plaintiffs' request to submit the transactional documents relating to Alta Wind owners A and B.  Plaintiffs shall either provide the government with the unredacted versions of the transactional documents, or a privilege log detailing any redacted portions of the document.  As fully addressed in footnote 3, the Court **STRIKES** the government's "Notice and Correction of Inadvertent Misstatement," ECF No. 254, from the record.  The parties **SHALL FILE** a joint status report on or before **9 July 2021** proposing a schedule for the additional deposition, discovery, and filings in light of the Court's order.

      **IT IS SO ORDERED.**

                              s/ Ryan T. Holte
                              RYAN T. HOLTE
                              Judge

---

looking at only one of the "two independent reasons why [the Fifth Circuit wasn't] going to remand for new evidence in that case."  *Id*. at 154:4–12. Fifth, government counsel argues plaintiffs mischaracterize *Florida Power & Light Co. v. United States*, 103 Fed. Appx. 669 (Fed. Cir. 2004) by "claim[ing] that the Federal Circuit's mandate precluded additional evidence," a claim the government believes is "false" because "the remand was wide open as for the Court to determine appropriate costs."  *Id*. at 155:4–18.  Sixth, government counsel claims plaintiffs misapply *Winter v. Gober*, 219 F.3d 675 (Fed. Cir. 2000) because, according to the government, the Federal Circuit remanded the case to provide the plaintiff the opportunity to introduce new evidence  on the ground there "was no opportunity" to present the evidence at an earlier stage.  *Id*. at 158:2–159:3.  Plaintiffs in turn "absolutely reject" the government's characterization of plaintiffs' statements and the underlying cases.  Tr. at 159:19–20.  As plaintiffs note, "some of [the government's] arguments simply go . . .  not to the standard but to the [g]overnment's argument that there was no actual change in the law as exhibited by the Federal Circuit decision . . . ."  *Id*. at 159:24–160:3.  Plaintiffs responded specifically to the government's criticism of plaintiffs' characterization of various cases cited in the briefs and note "either [plaintiffs] cited [the aforementioned cases] correctly to begin with or the point the [g]overnment is really trying to make . . . [or] the change in law was more extensive in some of these cases than is here."  *Id*. at 161:18-162:23. The Court draws its own legal conclusions from the case law for the purpose of resolving the parties' joint motion and expresses no opinion on whether one party or the other mischaracterized any particular case in the briefing. *See supra*.