# In the United States Court of Federal Claims

Nos. 13-402, 13-917, 13-935, 13-972, 14-47, 14-93, 14-174, 14-175, 17-997

(Filed: 24 January 2023)

NOT FOR PUBLICATION

```
*****************************************
ALTA WIND I OWNER LESSOR C,           *
et al.,                               *
                                      *
              Plaintiffs,             *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
              Defendant.              *
                                      *
*****************************************
```

*Steven J. Rosenbaum*, with whom were *Dennis B. Auerbach* and *Thomas R. Brugato*, Covington & Burling LLP, all of Washington, DC, for plaintiffs.

*James E. Weaver*, Trial Attorney, with whom were *Miranda Bureau*, Trial Attorney, *Andi Leuszler*, Trial Attorney, *Arie Rubenstein*, Trial Attorney, *Bart D. Jeffress*, Trial Attorney, *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, and *David A. Hubbert*, Deputy Assistant Attorney General, Tax Division, Department of Justice, all of Washington, DC, for defendant.

## **ORDER**

**HOLTE, Judge.**

Plaintiffs, owners of six wind farm facilities in southern California, allege the government underpaid them by over $200 million pursuant to § 1603 of the American Recovery and Reinvestment Act of 2009. The government filed a counterclaim, asserting it overpaid plaintiffs by over $59 million. Following a trial on the claims, the previously undersigned judge held for plaintiffs. The Federal Circuit reversed, ruling the trial court improperly calculated the basis of the wind farms at the point plaintiffs purchased them and improperly excluded testimony by the government's expert; many fact-intensive issues remain on remand.[1] This case was transferred to the undersigned on 29 July 2019. Following transfer of the case, the parties engaged in further discovery; this Order only addresses discrete discovery issues raised by the parties. For the following reasons, the Court finds the calculations of indemnity payments are relevant to determining what consideration was paid, which is the starting point for the

---

[1] "On remand, the Claims Court will have to make a *factual determination* as to the allocation of purchase price." *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1377 (Fed. Cir. 2018) (emphasis added).

"waterfall" allocation the Court is charged with undertaking. Accordingly, and in keeping with liberal discovery standards, the Court grants in part and denies in part the government's motion for additional discovery relating to indemnity payments, noting the government may revisit its denied requests if the granted discovery provides a stronger relevance argument.

**I.     Background**

   **A.     Factual and Procedural History[2]**

The following factual and procedural history comes from the Court's 18 June 2021 Opinion and Order on the parties' joint motion for the resolution of then pending discovery-related issues.

   Oak Creek Energy Systems ("Oak Creek") partnered with Allco Wind Energy Management Pt. Ltd. ("Allco") in 2006 "to finance, develop, and construct windfarms in the Tehachapi region of California." *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1370 (Fed. Cir. 2018). Oak Creek and Allco entered into a Master Power Purchase and Wind Project Development Agreement with Southern California Edison later that same year, providing "the Oak Creek/Allco subsidiary would develop multiple wind facilities . . . with all of that output to be sold to [Southern California Edison] for a period of roughly 24 years." *Alta Wind I Owner-Lessor C v. United States*, 128 Fed. Cl. 702, 709 (Fed. Cl. 2016). As part of this arrangement, Southern California Edison was to enter into separate power purchase agreements ("PPAs") with each individual windfarm. *Alta Wind I*, 897 F.3d at 1370.

   By June 2008, Oak Creek and Allco had completed development work on the facilities ("the Alta Facilities") but had not begun construction. "Specifically, . . . they had (1) completed environmental studies; (2) secured key transmission and interconnection queue requests in the Tehachapi Renewable Transmission Project . . . (3) secured land rights; (4) begun the permitting process; (5) completed site analysis for turbines and other major equipment; (6) purchased GE turbines and executed turbine-related contracts; (7) constructed meteorological towers and collected wind data; and (8) secured the Master PPA with SCE." *Alta Wind I*, 128 Fed. Cl. at 709. Terra-Gen acquired Allco's U.S. wind energy business that same year and proceeded to "complet[e] the development and construction of the Alta Facilities" and execute Oak Creek and Allco's individual windfarm PPA contracts with Southern California Edison. *Alta Wind I Owner Lessor C*, 150 Fed. Cl. 152, 155 (Fed. Cl. 2020); *Alta Wind I*, 897 F.3d at 1370.

---

[2] In May 2016, the previously assigned judge held a nine-day bench trial in this case and ruled in favor of plaintiffs. *See Alta Wind I Owner-Lessor C v. United States*, 128 Fed. Cl. 702, 706–08 (2016). The government appealed, and on 27 July 2018, the Federal Circuit issued an opinion vacating this court's judgment and remanding the case. *See Alta Wind I Owner Lessor C*, 897 F.3d at 1382–83. A full recitation of the factual history can be found in these cases. The factual and procedural history in this Order contains only those facts pertinent to the government's motion for additional discovery.

> Congress enacted The American Recovery and Reinvestment Act ("ARRA") of 2009, Pub. L. No. 111-5, 123 Stat. 115, 364-66, as part of its efforts to strengthen the economy and invest in the nation's infrastructure. Section 1603 of the ARRA provides "a cash grant to entities that 'place[] in service' certain renewable energy facilities." *Alta Wind I*, 897 F.3d at 1367–68. The grant amount was determined "using the basis of the tangible personal property of the facility (with certain exclusions)." *Id.* at 1368 (citing § 1603(b)(1)). "Terra-Gen itself was not qualified to receive a section 1603 payment, as section 1603(g)(4) barred a 'pass-thru entity' from receiving a grant if any 'holder of an equity or profits interest' in the entity was a nonprofit, and Terra-Gen had some nonprofit equity holders." *Alta Wind I*, 897 F.3d at 1370.
>
> Unable to receive the § 1603 grants, Terra-Gen proceeded to sell five of the windfarms (Altas I–V) to plaintiffs over a two-year period from 2010 to 2012. *Id.* at 1371. These sales were sale-leaseback transactions, whereby the windfarms were purchased and then leased back to Terra-Gen by the plaintiffs. *Id.* Terra-Gen sold a sixth facility outright to one of the plaintiffs in 2012. *Id.* "Plaintiffs appear to have placed each facility into service within weeks of its acquisition" and proceeded to apply for over $703 million in grants through § 1603 "using the unallocated method to determine basis." *Id.* The Treasury Department required "companies applying for a section 1603 grant provide an opinion from an independent auditor validating the claimed grant-eligible costs," for which plaintiffs retained KPMG. *Id.* "KPMG certified that plaintiffs' allocations were fairly stated." *Id.* The Treasury Department ultimately awarded plaintiffs cash grants of approximately $495 million based on the costs of the facilities' grant-eligible construction and development, instead of plaintiffs' method of allocation using each facility's unallocated basis. *Alta Wind I*, 150 Fed. Cl. at 156.
>
> "In June 2013, plaintiffs filed separate claims against the government, which were later consolidated, 'seeking over $206 million in additional section 1603 grants.'" *Id.* (quoting *Alta Wind I*, 897 F.3d at 1371[)]. On 31 October 2016, the Court "awarded Plaintiffs damages in the amounts equal to the shortfall between the grant amounts to which Plaintiffs were entitled and the Government awarded." *Id.* at 722. The Federal Circuit vacated and remanded the case on appeal, holding the purchase prices paid for the Alta Facilities should be "allocated using the residual method" under I.R.C. § 1060. *Alta Wind I*, 897 F.3d at 1376.

*Alta Wind I Owner Lessor C v. United States*, 154 Fed. Cl. 204, 207–09 (2021).

On 14 June 2013, plaintiffs filed separate complaints against the government. The complaints, later consolidated, allege the government underpaid plaintiffs pursuant to § 1603 grants. *See* Compl., ECF No. 1; Order, ECF No. 27; Order, ECF No. 196.[3] In December 2015, the government counterclaimed, alleging

---

[3] Two plaintiffs filed their initial complaints on 24 July 2017, and the cases were stayed pending appeal to the Federal Circuit of this case. *See Alta Wind I Owner Lessor A v. United States*, Case No. 17-997, ECF No. 1 (Fed.

overpayment to plaintiffs in the amount of $58,884,366. Def.'s Mot. to Amend the Pleadings to Add Countercls. Based on Expert Op., ECF No. 75 at 10. Th[is] [c]ourt began a nine-day trial on 9 May 2016, and heard the testimony of eleven witnesses, including James Pagano, George Revock, Damon Huplosky, Anthony Johnston, Dr. Edward Maydew, and Dr. Colin Blaydon. *Alta Wind I*, 128 Fed. Cl. at 707. Th[is] [c]ourt excluded the government's expert, Dr. Parsons, from testifying during the trial after the previously undersigned judge concluded he "attempted to conceal articles he wrote for Marxist and East German publications" and "thereby provided untruthful testimony under oath to the Court." *Id*. On 24 October 2016, the previously undersigned judge found "the [g]overnment should have used [p]laintiffs' purchase prices, subject to reasonable allocations . . . as basis in calculating [p]laintiffs grants under Section 1603" and awarded plaintiffs $206,833,364. *Id*. at 722–24. The government appealed, and on 27 July 2018, the Federal Circuit [vacated] and remanded the case to this court. *Alta Wind I*, 897 F.3d at 1382–83. In remanding the case, the Federal Circuit stated "reassignment [of the case] is appropriate on remand" to "preserve the appearance of fairness." *Id*. (remanding the case for reassignment pursuant to [Rule] 40.1 [of the Rules of the Court of Federal Claims ('RCFC')]). . . .

On 29 July 2019, this case was reassigned to the undersigned Judge. *See* Order, ECF No. 197. The government filed a motion to dismiss for lack of subject matter jurisdiction on 21 January 2020, and the Court held oral argument on the government's motion on 17 July 2020. *See* Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support, ECF No. 208, Order, ECF No. 234. On 17 July 2020 the Court further ordered the parties to "file a joint motion for resolution of pending discovery-related issues" . . . . *See* Order, ECF No. 240. . . . The parties filed their "Joint Motion for Resolution of Pending Discovery-Related Issues" on 4 August 2020. *See* Joint Mot. for Resolution of Pending Discovery-Related Issues, ECF No. 247 ("Joint Discovery Motion").

. . . The Court denied the government's motion to dismiss on 21 October 2020. *See* Opinion and Order, ECF No. 264.

*Id.* at 209–10. The Court granted plaintiffs' discovery requests in its 18 June 2021 Opinion and Order. *Id.* at 226–27.

On 5 November 2021, the government filed a motion for additional discovery, challenging plaintiffs' privilege claims ("Gov't's First Mot. Additional Disc."), ECF No. 287. Along with the motion, the government filed an appendix containing requests for production ("Gov't's RFPs"), ECF No. 287-11. Plaintiffs filed a response to this motion on 19 November 2021 ("Pls.' First Additional Disc. Resp."), ECF No. 288. On 9 December 2021, the government filed its reply ("Gov't's First Additional Disc. Reply"), ECF No. 291. The next day, the government filed a second motion for additional discovery, requesting documents and information following the deposition of Mr. James Pagano, a Terra-Gen employee ("Gov't's

---

Cl. July 24, 2017). On 19 December 2018, this Court consolidated all plaintiffs under case number 13-402. Order, ECF No. 196.

Second Mot. Additional Disc."), ECF No. 292.  The government included as exhibits the transcript of Mr. Pagano's deposition, ECF No. 292-2, and an exhibit used during Mr. Pagano's deposition ("the Pagano exhibit"), ECF No. 292-4.  The parties filed a joint status report ("JSR") on 7 June 2022 informing the Court they had "narrowed or eliminated a number of disputes[.]"  7 June 2022 JSR, ECF No. 306.

On 12 July 2022, the Court denied in part the government's motion challenging plaintiffs' privilege claims concerning plaintiffs' litigation-related agreements, ECF No. 287, after *in camera* review of the unredacted documents.  12 July 2022 Order at 1, ECF No. 308.  The Court noted "three discovery issues remain unresolved:  [(1)] Whether plaintiffs must comply with requests 2 and 3 of the government's requests for production . . . ; [(2)] Whether plaintiffs must comply with requests 6 and 11–14 of the government's requests for production . . . as modified by the government in the parties' [7 June 2022 JSR] . . . ; and [(3)] Whether plaintiffs must comply with the government's request to depose a Terra-Gen employee regarding (a) the derivation or computation of the various indemnity related payments or adjustments (including grant shortfall, basis adjustment, delay, or other true-up payments), (b) why and how computations may have changed over time, and (c) the source documents produced in connection with the preceding issue[.]"[4]  *Id.* at 2.  The Court held oral argument on the remaining issues on 18 August 2022.  *See* 25 July 2022 Order, ECF No. 311; 18 Aug. 2022 Oral Arg. Tr. ("Tr."), ECF No. 313.

On 6 September 2022, plaintiffs filed a motion for partial summary judgment "seek[ing] rulings as a matter of law that:  (1) the Section 1603 cash grant is not a separate asset for purposes of applying Tax Code Section 1060; (2) the value of the cash grant must be included in the basis of the Section 1603-eligible property; and (3) Plaintiffs' eligible basis may not be reduced on account of the 'associated indemnities.' *i.e.*, the indemnity payments that Plaintiffs received from Terra-Gen Power, LLC when the Government underpaid the cash grants due under Section 1603."  Pls.' Mot. Partial Summary J. ("Pls.' Partial MSJ") at 2, ECF No. 314.  The government filed a response on 21 October 2022, *see* Def.'s Resp. Pls.' Mot. Partial Summary J. ("Gov't's Partial MSJ Resp."), ECF No. 317, and plaintiffs filed their reply on 21 November 2022, *see* Reply Mem. Supp. Pls.' Mot. Partial Summary J., ECF No. 321.

### B. Discovery Requests at Issue

The parties confirmed at oral argument the following discovery requests remain pending:  (1) whether "plaintiffs must comply with request 3" of the government's RFPs[5]; (2) whether "plaintiffs must comply with requests 6 and 11–14" of the government's RFPs, as modified by

---

[4] The JSR stated, "Defendant is not seeking further relief for Requests 1-2 & 5-19 in ECF No. 292-6.  Defendant is also not seeking further relief for the requests in ECF No. 292-7."  7 June 2022 JSR at 14.  The Court's 12 July 2022 Order noted the parties had resolved their dispute regarding requests 3 and 4 of ECF No. 292-6.  12 July 2022 Order at 2.  In a 23 April 2022 Order, the Court noted "the government agreed to withdraw its request to depose Mr. Pagano regarding attorney-client conferences during his deposition" and "plaintiffs agreed to produce a summary description of documents related to the creation of exhibits PX-880 and PX-881, including the number of drafts, and information about nonattorney-client communications related to the creation of the exhibits[.]"  23 April 2022 Order at 2, ECF No. 302.  All issues raised by the government in its second motion for additional discovery have accordingly been resolved, so the Court finds the motion moot.

[5] The parties confirmed at oral argument request 2 of the government's RFPs is no longer in dispute.  Tr. at 5:14–21.

the 7 June 2022 JSR; and (3) "whether plaintiffs must comply with the government's request to depose a Terra-Gen employee" regarding item (2). Tr. at 5:25–6:15.

Request 3 is for "[a]ll documents referred to in the Agreements[,]" where the Agreements "means and includes Document 213-6, and the 8 pdfs produced to defendant on August 27, 2021, Bates numbered as TGP0796383-9, TGP0796352-6, TGP0796357-62, TGP0796363-7, TGP0796368-74, TGP0796375-82, TGP0796348-51, and TGP0796344-7." Gov't's RFPs at 1. At oral argument, the government narrowed this request to the five documents specifically mentioned and the demand letters generally referenced in the Agreements. Tr. at 7:14–8:1. The five documents, all relating to subsequent sales, are: (1) an "Assignment and Assumption Agreement, dated May 14, 2012" between Citibank, N.A. ("Citi") and its subsidiary, Alta Wind CL II, LLC; (2) a "Purchase and Sale Agreement, dated May 14, 2012" between Citi and Liberty Alta, Inc.; (3) an "Assignment and Assumption Agreement, dated as of December 29, 2011" between Citi and a wholly-owned subsidiary, Alta Wind III Owner Participant, LLC; (4) an "Assignment and Assumption Agreement, dated May 14, 2012" between Citi and its wholly-owned subsidiary, Alta Wind CL IV, LLC; and (5) a "Purchase and Sale Agreement, dated May 14, 2012" between Citi and Liberty Alta IV, Inc. Gov't's First Mot. Additional Disc. Ex. 3 at 2, ECF No. 287-3; Ex. 4 at 2, ECF No. 287-4; Ex. 5 at 2, ECF No. 287-5; *see* Tr. at 14:19–15:19, 40:9–41:5, 45:22–46:16. Plaintiffs have inadvertently produced some documents relating to subsequent sales. Tr. at 20:2–11. Plaintiffs have also produced some, but not all, demand letters. *See* Tr. at 52:10–21 ("[THE GOVERNMENT]: . . . [W]e have some demand letters—for example, . . . I've seen demand letters for Alta I . . . . But I don't know what the other demand letters might say.").

As modified by the 7 June 2022 JSR, requests 6 and 11–14 are:

> 6. [D]ocuments reflecting (1) the sources of the payment of the shortfall and compensation for delay; (2) computation of the shortfall and compensation for delay; (3) method of payment of the shortfall and compensation for delay (for example, checks and/or wire transfer receipts); and (4) the date or date[s] of each of the payments of shortfalls and compensation for delay.
> 11. All demands for payment referred to in the Agreements.
> 12. All documents sufficient to identify "certain adverse federal income tax consequences of the Grant Shortfalls and the indemnity payment" referred to on page 2 of TGP0796368 and page 2 of TGP0796383.
> 13. All documents sufficient to identify "certain costs and adverse tax consequences attributable to the Additional Cash Grant Process" on page 2 of TGP0796363.
> 14. All documents referring to or describing, the payment of grant shortfalls and any subsequent or related payments to Everpower (or its owners or affiliates) from the date of the Alta VI Section 1603 application through the current date.

7 June 2022 JSR at 6 n.3. The government noted in the 7 June 2022 JSR it would accept, in the alternative, "a schedule encompassing all indemnity-related payments or adjustments (including grant shortfall, basis adjustment, delay, or other true-up payments), whether or not paid directly by Terra-Gen to Plaintiffs and whether or not such payments are specifically identified as 'cash

grant indemnity payments' . . . [and] documents computing/deriving/reflecting any [such] payments or adjustments[.]" *Id.* at 9–10. Plaintiffs produced a schedule to the government and provided it to the Court via email before oral argument. *See* Tr. at 11:9–23.

The government's final request is for a 30(b)(6) deposition of a Terra-Gen employee to explain documents produced in response to requests 6 and 11–14. 7 June 2022 JSR at 10 (The government "seeks a deposition of a Terra-Gen employee who can discuss (a) the derivation or computation of the various indemnity-related payments or adjustments (including grant shortfall, basis adjustment, delay, or other true-up payments), (b) why and how computations may have changed over time, and (c) the source documents produced in connection with [requests 6 and 11–14]."); Tr. at 70:24–71:2 ("[THE GOVERNMENT]: . . . [T]he documents [from requests 6 and 11–14] without a deponent, if the documents are complicated, would not suffice. We would need somebody to explain them. We are asking for a 30(b)(6) deponent[.]").

## II. Applicable Law

"The proceedings of the Court of Federal Claims shall be . . . in accordance with the Federal Rules of Evidence." 28 U.S.C. § 2503. Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevance . . . under Rule[] 401 . . . [is] determined in the context of the facts and arguments in a particular case . . . ." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

This court's interpretation of the RCFC is guided by case law interpreting the Federal Rules of Civil Procedure. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended Aug. 2, 2021) ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). Regarding the scope of discovery, the rules of this court provide:

> [P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1). "Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court." *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery." *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016), *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 478 (mem.) (2018). In deciding the proper scope of discovery, "the court must be careful not to deprive a party of

discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment).

Regarding the deposition of a corporation employee, RCFC 30(b)(6) provides:

In its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, and continuing as necessary, the serving party and the organization must confer in good faith about the number and description of the matters for examination and the identity of each person the organization will designate to testify. A subpoena must advise a nonparty organization of its duty to make this designation and to confer with the serving party. The persons designated must testify about information known or reasonably available to the organization.

### III.  Parties' Arguments

The government asserts each of their requests are relevant to understanding adjustments to the purchase price, which informs what consideration was paid and where the Court should begin its allocation of purchase price. *See* 7 June 2022 JSR at 4–5, 8–10. Plaintiffs argue the government's requests are untimely and burdensome, the discovery already produced is sufficient for the government to make its argument on whether the indemnities should be treated as a separate intangible asset, and the post-closing adjustments are irrelevant because they will reverse if plaintiffs prevail. *Id.* at 2–4, 6–7, 10.

### IV.  Relevance of the Government's Requests for Production

Before addressing each specific discovery dispute, the Court first addresses the issue of the general relevance of the calculations surrounding indemnities and purchase price adjustments. In support of the relevance of the purchase price adjustments generally, the government argues the adjustments affect the consideration paid in the transactions, which is the starting point for the waterfall allocation analysis of the residual method. *See* Tr. at 13:5–9 ("[THE GOVERNMENT]: . . . The purchase price adjustments have been made. They're relevant because they're going to affect the consideration, which is at the very top of the waterfall that we're going to then start marking down."). The government seeks to understand two components of the indemnities: (1) the component making up the shortfall (the "difference between the grant that was being applied for and the grant that the Treasury actually paid"); and (2) the component adjusting the purchase price to account for a "lower base on which [the purchasers can] take depreciation." Tr. at 17:5–19.

Plaintiffs dispute the relevance of the adjustments by noting the downward basis adjustments will reverse if plaintiffs prevail and obtain the higher grant amount. Tr. at 33:22–25.

The government replies plaintiffs may not prevail and would need to take expert fees off the top of any recovery if they did prevail, resulting in an incomplete reversal of the downward adjustment. Tr. at 39:3–10. Plaintiffs further note the purchase prices were stipulated to and cannot now be disputed, Tr. at 35:18–22, but the government emphasizes the purchase price *adjustments* were not stipulated to, Tr. at 39:14–21.

Plaintiff attempts to argue the issue of whether the indemnities are a separate intangible asset is purely legal, *see* Tr. at 55:3–8, but the Federal Circuit stated directly in its remand Opinion the Court would "have to make a *factual determination* as to the allocation of purchase price." *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1377 (Fed. Cir. 2018) (emphasis added). Under the 401 relevance test, the Court finds calculations supporting the indemnity payments and purchase price adjustments—to which the parties have not stipulated—have a "tendency to make a fact[—the consideration paid is not the original purchase price but rather a different number after post-closing adjustments—]more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. Consideration is the starting point for the residual method "waterfall" analysis—the Court's charge on remand—so facts affecting consideration are necessarily "of consequence in determining the action." *Alta Wind I Owner Lessor C*, 897 F.3d at 1376, 1382; Fed. R. Evid. 401. The calculations regarding purchase price adjustments and indemnities are accordingly relevant. The Court now addresses whether the specific discovery requests bear on indemnity payments and purchase price adjustments in turn.

### A.      Request 3

The parties dispute the timeliness and relevance of request 3. The government argues "[b]ecause defendant has never had an opportunity to take discovery related to the Agreements, this Court should permit defendant to do so now." Gov't's First Mot. Additional Disc. at 27. "[T]he Court should have a full record to decide two issues left to this Court by the Federal Circuit: (1) whether the portion of the purchase price attributable to the expected section 1603 grants and any associated indemnities are separate from the value of the windfarms' tangible personal property; and (2) whether the cash grant entitlement or associated indemnities are separate intangibles." *Id.* (citing *Alta Wind I Owner Lessor C*, 897 F.3d at 1376 n.8). The relevance of the requested discovery, the government asserts, is "information about Terra-Gen and plaintiffs' implementation of [the indemnities]." *Id.*

Plaintiffs assert, "The new requests come far too late." Pls.' First Additional Disc. Resp. at 21. Plaintiffs note the government had copies of the indemnities before this case began, and fact discovery has now been closed for years. *Id.* "The Government thus had ample opportunity to take discovery concerning [the indemnities] during the fact discovery period, including on such matters as how the parties treated indemnity payments in their tax filings and the sources of funds used to make indemnity payments." *Id.* at 21–22. Plaintiffs argue revealing "Terra-Gen's indemnity obligation would cover any grant shortfalls resulting from counterclaims" does not justify "the broad reopening of discovery that the Government seeks." *Id.* at 22. Even if the government's requests were timely, plaintiffs assert the requests are not directed to relevant information. *Id.* at 23. Plaintiffs argue "the materials they have provided or will soon provide . . . are more than sufficient, especially in light of Defendant's failure to seek more fulsome discovery on the cash-grant indemnities when discovery was open in 2014 and 2015." 7 June

2022 JSR at 4.

The government replies to plaintiffs' untimeliness argument by noting it was plaintiffs who sought to reopen discovery. Gov't's First Mot. Additional Disc. Reply at 17. Further, the government argues the documents central to the discovery disputes were "produced by Plaintiffs long after the close of fact discovery . . . [at] trial in 2016, or thereafter." 7 June 2022 JSR at 4. "Defendant's position is straightforward: if the Agreements refer to other documents not yet produced, then those other documents should be produced now." *Id.* The government seeks "a full picture of the component parts of the[ sale-leaseback] transactions, including those parts relating to post-closing adjustments." *Id.* at 5.

The Court first addresses the five specific documents identified by the government as part of request 3 before turning to the demand letters.

### 1. Five Documents Identified by the Government at Oral Argument

The parties argue whether five documents relating to subsequent sales are relevant. The government argues the five documents identified as part of request 3 are relevant and should be produced for two reasons. First, the government argues fairness requires production—because some documents relating to subsequent sales have already been produced, albeit inadvertently, the government is entitled to these five additional documents to understand the full picture of the subsequent sales. *See* Tr. at 32:21–24 ("[THE GOVERNMENT]: . . . [I]f this was inadvertent[,] when we get to Alta III and IV in a minute, you're going to see more inadvertent production. This is not the sole instance."). Second, the government argues the subsequent sales may have affected purchase price adjustments, and therefore consideration, for the original sale-leaseback transactions. Tr. at 19:9–13 ("[THE GOVERNMENT]: . . . [If] there is a purchase price for [a subsequent purchaser] that is somehow incorporated basis adjustments or a portion of that purchase price, that's certainly a material consideration.").

Plaintiffs respond the subsequent purchases are irrelevant. "[T]he subsequent sale[,]" plaintiffs argue, "has nothing to do with the indemnity payments and . . . has nothing to do with the 1060 allocation that the Court needs to undertake in this case." Tr. at 21:23–22:2. Plaintiffs assert "Terra-Gen is not a party to [the subsequent purchase contracts,] so [the subsequent purchase documents] do not involve the indemnities that Terra-Gen provided to the plaintiffs." Tr. at 23:4–6.

The only issue regarding the five documents is relevance. The government admitted at oral argument the relevance of the five documents is conditional on further discovery. Tr. at 30:12–24 ("THE COURT: . . . [Y]ou have the purchase price for what the MetLife sale was, the 50 percent. [THE GOVERNMENT]: We do[.] THE COURT: . . . [W]hat did that give? [THE GOVERNMENT]: Well, nothing in and of itself . . . . It is a starting point. We would need more information[.]"), 48:16–19 ("THE COURT: . . . [T]he inadvertent product documents that you do have, how have those helped you now? [THE GOVERNMENT]: They don't help me in the absence of further discovery."). If the Court grants further discovery which shows the calculations behind the purchase price adjustments and indemnities depended, at least in part, on the five documents, then the five documents would be relevant. Absent such a showing, the

government cannot point to any facts it expects to find in the five documents corresponding to subsequent sales which would bear on the consideration paid in the original sale. The Court accordingly denies the government's request 3 as it pertains to the five documents identified at oral argument; if additional discovery granted by the Court *infra* shows the five documents in fact bear on the purchase price adjustments or indemnity payments, the government may file a renewed motion to request this discovery. *See Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court.").

### 2. Demand Letters

The parties dispute the relevance of the demand letters and the underlying negotiations. The government ties the relevance of the demand letters to the schedule. Specifically, the government seeks to understand whether negotiations between Terra-Gen and the purchasers provide insight into calculations behind the schedule already produced by plaintiffs. Tr. at 49:21–50:7. If "elaborate spreadsheet computations" went into the demand letters, however, the government concedes the letters would not be relevant. Tr. at 50:2–24.

Plaintiffs concede the demand letters relate to the negotiation of the indemnities and their calculation but contend the negotiations are not relevant. Tr. at 54:1–11. "[T]he way that the parties computed the numbers," plaintiffs assert, is "not relevant to the issue of whether [an indemnity] is a separate asset [under the residual analysis.]" Tr. at 55:23–56:2. Plaintiffs also argue against production on RCFC 26(b) grounds. Tr. at 60:4–24 ("[PLAINTIFFS]: . . . [I]t would be quite burdensome to . . . reconstruct these complicated calculations, reconstruct the back-and-forth between the parties.").

The Court first addresses the relevance of the demand letters. Plaintiffs admit the demand letters are relevant to the negotiation and calculation of the indemnities, Tr. at 54:1–11, and the Court finds, *supra* Section IV, the calculations behind the indemnities are relevant to the issue of what consideration was paid. The Court therefore finds the demand letters are relevant as they are part of negotiations and calculations which bear on how the indemnity payments are divided between the shortfall component and the depreciation component. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) (stating whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

Finding the demand letters relevant, the Court now analyzes whether production would be proportional under RCFC 26. While plaintiffs emphasize the burden of "reconstruct[ing] the back-and-forth between the parties[,]" Tr. at 60:20, plaintiffs admit "determining whether the indemnity agreements are intangible assets has to be resolved by the Court[.]" Tr. at 57:3–7. The "importance of the issues at stake in the action . . . [and] the importance of the discovery in resolving the issues" both militate in favor of discovery as the Court must undertake the "waterfall" analysis of the residual method, and the Court cannot determine the starting point of consideration without informed argument by the parties. RCFC 26(b)(1). Accordingly, and in keeping with this court's "liberal treatment to the rules of discovery[,]" the Court finds

production of the demand letters would not be unduly burdensome and would be proportional and grants the government's request 3 as it pertains to the demand letters. *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016), *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 478 (mem.) (2018).

### B.     Requests 6 and 11–14

The parties contest whether the calculations behind the schedule of indemnity payments are relevant.  Regarding the requested schedule of indemnity payments, including adjustments, and associated 30(b)(6) deposition, the government argues "[s]uch [basis] adjustments are highly material to a Section 1060 analysis."  7 June 2022 JSR at 8 n.4 (citing 26 C.F.R. §§ 1060-1(c) (purchaser's "consideration" is its purchase cost "properly taken into account in basis"), 1.338-7(a) & (e) Example 2 (addressing redeterminations of basis in the context of a refund)).  The government seeks discovery in the form of a detailed schedule and a 30(b)(6) deposition to understand what portion of the post-closing adjustments were allocated to "grant shortfall payments" and to "adjustments compensating lessor/purchasers for reductions in their respective depreciable tax basis."  *Id.* at 8–9.  The government argues the schedule produced by plaintiffs is not sufficient because plaintiffs failed to produce "the source documents computing the amounts listed in the schedule" and failed "to have in the schedule the actual transactions that reflect the grant shortfall payments[.]" Tr. at 53:11–14.  The government points to a delay payment that looks "too high" based on prevailing interest rates; the government argues "embedded in that delay payment [is] an actual purchase price adjustment." Tr. at 66:16–67:16.  More information regarding the calculations in the schedule is needed, the government asserts, because the government is "entitled to . . . dig into whether those adjustments are correct." Tr. at 66:6–7.  The government also emphasizes discrepancies in the Pagano exhibit and deposition regarding Mr. Pagano's calculations of the purchase price adjustments and argues a more detailed schedule is necessary to understand the Pagano exhibit, particularly the issue of depreciation.  Tr. at 72:15–73:11, 75:21–24.

Plaintiffs contend the schedule provided is sufficient, and "the mathematics behind how the indemnity payments were calculated are not relevant."  7 June 2022 JSR at 7.  Specifically, plaintiffs argue "[h]ow [Terra-Gen's indemnity payment] amounts were calculated has no bearing on what the indemnity payments were or on whether or not the indemnities should be treated as separate intangible assets conveyed in the Alta transactions." *Id.*  Plaintiffs further assert the government already has all the information it needs to understand any mistakes in the Pagano exhibit. Tr. at 74:12–75:13.  For the same reasons plaintiffs argue they need not provide a more detailed schedule, they assert the government has no basis for a 30(b)(6) deposition on the calculations.  *See* 7 June 2022 JSR at 10.

The Court first addresses the relevance of the calculations behind the schedule.  Plaintiffs argue the exact nature of the calculations behind the schedule cannot change the final payments listed, 7 June 2022 JSR at 7, but this argument requires the government to trust the accuracy of plaintiffs' calculations.  *See* Tr. at 66:1–7 ("[THE GOVERNMENT]: . . . [T]here are various issues to be decided.  But the starting point is what is the adjusted price?  What are the purchase price adjustments that should be considered?  Are these calculations correct? . . .  [W]e're entitled to find out and to dig into whether those adjustments are correct.").  The Court agrees the

government should have detail regarding plaintiffs' calculations so the government may form its own arguments on what the calculations, and in turn the consideration after post-closing adjustments, should be. The Court therefore finds the calculations behind the schedule are relevant as they bear on how the post-closing adjustments affect the consideration paid. *See Oppenheimer Fund*, 437 U.S. at 351 (citing *Hickman*, 329 U.S. at 501) (stating whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

Finding the calculations behind the schedule relevant, the Court now analyzes whether production would be proportional under RCFC 26. Similar to the demand letters, plaintiffs argue "trying to reconstruct the calculations" is unduly burdensome, and they characterize the relevance of the information as "marginal at best[.]" Tr. at 70:11–19. Marginal relevance, however, is still relevance, and the Court finds calculations affecting what consideration was paid—the starting point for the "waterfall" analysis of the residual method—have more than marginal relevance. The "importance of the issues at stake in the action . . . [and] the importance of the discovery in resolving the issues" again support granting this discovery. RCFC 26(b)(1). Accordingly, and in keeping with this court's "liberal treatment to the rules of discovery," the Court finds production of the calculations behind the schedule would not be unduly burdensome and would be proportional and grants the government's requests 6 and 11–14 as modified in the 7 June 2022 JSR. *Securiforce Int'l Am.*, 127 Fed. Cl. at 400.

C. **Deposition of a Terra-Gen Employee**

The Court now analyzes whether the deposition of a Terra-Gen Employee is necessary and relevant. Plaintiffs agreed at oral argument the request for a deposition raises the same issues as requests 6 and 11–14. Tr. at 69:12–24 ("THE COURT: . . . [W]ith respect to the deposition of the Terra-Gen employee, would you agree that if the Court finds the government's modified request related to 6 and 11–14 applicable and that plaintiffs must comply, you would agree that the government may then depose a Terra-Gen employee? [PLAINTIFFS]: . . . [I]t is the same issue as the documents. . . . [W]e have a relevancy objection . . . . [I]f the Court were to find that [the documents are] relevant, then our objection to the deposition is likewise relevance."). For the same reasons the Court finds the government's modified requests 6 and 11–14 relevant, not unduly burdensome, and proportional and grants those requests, *supra* Section IV.B, the Court grants the government's request for a 30(b)(6) deposition of a Terra-Gen employee regarding the schedule and the calculations behind the schedule. *See Oppenheimer Fund*, 437 U.S. at 351; *Securiforce Int'l Am.*, 127 Fed. Cl. at 400.

V. **Plaintiffs' Pending Motion for Partial Summary Judgment**

Plaintiffs' motion for partial summary judgment appears to raise issues overlapping with the discovery issues covered in this Order. Plaintiffs request judgment as a matter of law, for example, "Plaintiffs' eligible basis may not be reduced on account of the 'associated indemnities.' *i.e.*, the indemnity payments that Plaintiffs received from Terra-Gen Power, LLC when the Government underpaid the cash grants due under Section 1603." Pls.' Partial MSJ at 2; *see also* Gov't's Partial MSJ Resp. at 40 n.19 ("[T]he parties dispute the effect of the payment of

indemnity amounts.  It may be that the purchase prices should simply be reduced by the amounts ultimately paid as rebates.  *See* 26 C.F.R. § 1.338-7.  Discovery has not yet been completed as to the purchase price adjustments.").  If the Court had granted partial summary judgment on the issue, it could not grant discovery regarding calculations behind the indemnities; the indemnities, and by extension the calculations behind them, would not affect consideration paid, so the requested discovery would no longer bear on facts "of consequence in determining the action." Fed. R. Evid. 401.  The Court, however, has not granted summary judgment on the issue and so grants the discovery analyzed *supra*.  The Court does not rule on plaintiffs' motion for partial summary judgment in this Order.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS in PART** and **DENIES in PART** the government's first motion for additional discovery, ECF No. 287, and **FINDS as MOOT** the government's second motion for additional discovery, ECF No. 292, *see supra* note 4.  The parties **SHALL FILE** a joint status report on or before **7 February 2023** stating their positions on:  (1) a proposed schedule for the granted discovery; (2) a proposed schedule for subsequent briefing (if needed) on revisiting the five documents the government identified as part of request 3; and (3) whether plaintiffs' motion for partial summary judgment is now moot or whether further proceedings are required.

**IT IS SO ORDERED.**

s/ Ryan T. Holte<br>
RYAN T. HOLTE<br>
Judge