# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 ℭ𝔩𝔞𝔦𝔪𝔰

Nos. 13-402, 13-917, 13-935, 13-972, 14-47, 14-93, 14-174, 14-175, 17-997

(Filed: 23 December 2023)

```
*****************************************
ALTA WIND I OWNER LESSOR C,              *
et al.,                                  *
                                         *
                    Plaintiffs,          *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *
                    Defendant.           *
                                         *
*****************************************
```

*Steven J. Rosenbaum*, with whom were *Dennis B. Auerbach* and *Samuel Howe*, Covington & Burling LLP, all of Washington, DC, for plaintiffs.

*James E. Weaver*, Trial Attorney, with whom were *Andi Hammock*, Trial Attorney, *Arie Rubenstein*, Trial Attorney, *G. Robson Steward*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, *David A. Hubbert*, Deputy Assistant Attorney General, Tax Division, U.S. Department of Justice, all of Washington, DC, for defendant.

**OPINION AND ORDER**

**HOLTE, Judge.**

Before the Court is plaintiffs' Motion for Reconsideration of the Court's 20 June 2023 Summary Judgment Order. On summary judgment, the Court held, in relevant part, anticipated cash grants are not separate tangible property for purposes of basis allocation and grant calculation. Concerned this ruling would preclude them from arguing in favor of their preferred method of calculating the fair market value of their windfarms at trial, plaintiffs now allege the Court's holding went further than necessary in denying their Summary Judgment Motion. The Court's Summary Judgment Order likewise concerned the American Council on Renewable Energy ("ACORE"), who subsequently requested leave to file an amicus brief representing the renewable energy industries' views on this case, which the government opposed. After a conference discussing ACORE's Motion with the parties and ACORE counsel, the Court granted ACORE permission to file. At oral argument on the Motion for Reconsideration, however, both parties agreed plaintiffs are free to offer any relevant valuation evidence at trial. Plaintiffs stated this clarification and agreement resolved the issues underlying their Motion. Because of this agreement, and for the foregoing reasons, the Court finds as moot plaintiffs' Motion for Reconsideration.

I.      **Factual and Procedural History**[1]

In June 2008, Oak Creek Energy Systems ("Oak Creek") and Allco Wind Energy Management Pty. Ltd. ("Allco") completed development of, but had not yet begun construction on, multiple wind facilities ("the Alta Facilities") in the Tehachapi region of California. *Alta Wind I Owner-Lessor C v. United States*, 128 Fed. Cl. 702, 709 (2016), *vacated and remanded*, 897 F.3d 1365, 1370 (Fed. Cir. 2018). Terra-Gen Power LLC ("Terra-Gen") acquired Allco's U.S. wind energy business the same year and proceeded to "complet[e] the development and construction of the Alta Facilities" and execute Oak Creek and Allco's individual windfarm power purchase agreement contracts with Southern California Edison. *Alta Wind I Owner Lessor C v. United States*, 150 Fed. Cl. 152, 155 (2020); *Alta Wind I*, 897 F.3d at 1370.

Congress enacted the American Recovery and Reinvestment Act (ARRA) of 2009, Pub. L. No. 111-5, 123 Stat. 115, 364-66, as part of its efforts to strengthen the economy and invest in the nation's infrastructure. Section 1603 of ARRA provides "a cash grant to entities that 'place[] in service' certain renewable energy facilities." *Alta Wind I*, 897 F.3d at 1367–68. The grant amount was determined "using the basis of the tangible personal property of the facility (with certain exclusions)." *Id.* at 1368 (citing ARRA § 1603(b)(1)). "Terra-Gen itself was not qualified to receive a [S]ection 1603 payment, as [S]ection 1603(g)(4) barred a 'pass-thru entity' from receiving a grant if any 'holder of an equity or profits interest' in the entity was a nonprofit, and Terra-Gen had some nonprofit equity holders." *Alta Wind I*, 897 F.3d at 1370.

Unable to receive the Section 1603 grants, Terra-Gen sold six of the windfarms to plaintiffs between 2010 and 2012. *Id*. at 1371. After acquiring the six Alta Facilities, "[p]laintiffs appear to have placed each facility into service within weeks" and proceeded to apply for over $703 million in grants through Section 1603 "using the unallocated method to determine basis." *Id.* The Treasury Department ultimately awarded plaintiffs cash grants of approximately $495 million based on the costs of the facilities' grant-eligible construction and development, instead of plaintiffs' method of allocation using each facility's unallocated basis. *Alta Wind I*, 150 Fed. Cl. at 156.

"In June 2013, plaintiffs filed separate claims against the government, which were later consolidated, 'seeking over $206 million in additional [S]ection 1603 grants.'" *Id.* (quoting *Alta Wind I*, 897 F.3d at 1371). In December 2015, the government counterclaimed, alleging overpayment to plaintiffs in the amount of $58,884,366. Def.'s Mot. to Amend the Pleadings to Add Countercls. Based on Expert Op. at 10, ECF No. 75. On 31 October 2016, this court "awarded Plaintiffs damages [of $206,833,364,] . . . the amount[] equal to the shortfall between the grant amounts to which [p]laintiffs were entitled and [those] the [g]overnment awarded." *Alta Wind I*, 128 Fed. Cl. at 722. The Federal Circuit vacated and remanded the case on appeal, holding the purchase prices paid for the Alta Facilities should be "allocated using the residual

---

[1] On 20 June 2023, the Court issued an opinion denying plaintiffs' Motion for Partial Summary Judgment. *See Alta Wind I Owner Lessor C v. United States*, 166 Fed. Cl. 386 (2023) (referred to as the "20 June Order"). A full recitation of the factual and procedural histories in this case can be found in the 20 June Order. *See id.* at 388–90. The factual and procedural history in this Opinion and Order contains only those facts pertinent to plaintiffs' Corrected Motion for Limited Reconsideration, ECF No. 350.

method" under [Internal Revenue Code ("IRC" or "Tax Code")] Section 1060. *Alta Wind I*, 897 F.3d at 1376.

On 29 July 2019, this case was reassigned to the undersigned Judge. Following discovery, on 6 September 2022, plaintiffs filed a motion for partial summary judgment "seek[ing] rulings as a matter of law that: (1) the Section 1603 cash grant is not a separate asset for purposes of applying IRC Section 1060 [(Section 1060)]; (2) the value of the cash grant must be included in the basis of the Section 1603-eligible property; and (3) [p]laintiffs' eligible basis may not be reduced on account of the 'associated indemnities.'" Pls.' Mot. Partial Summ. J. ("Pls.' Partial MSJ") at 2, ECF No. 314; *see also* Mem. in Supp. of Pls.' Mot. for Partial Summ. J. ("Pls.' MSJ Mem."), ECF No. 314-1.

The Court denied plaintiff's Motion for Partial Summary Judgment on 20 June 2023. *Alta Wind I Owner Lessor C v. United States*, 166 Fed. Cl. 386, 413 (2023) (referred to as the "20 June Order"). The Court held, in relevant part, "[t]he incremental consideration paid for the anticipated Section 1603 cash grants is not basis allocable to Class V tangible property . . . [and t]he portion of the purchase price pertaining to consideration for the anticipated Section 1603 cash grants is grant-ineligible intangible property." *Id.* The Court therefore deemed plaintiffs' "argument the anticipated cash grants and premiums are inherently part of the basis of the windfarm as Class V tangible property" "unavailing." *Id.* The Court's 20 June Order neither ruled on nor discussed in any manner the appropriate method for calculating the fair market value of the eligible tangible property.

On 18 July 2023, plaintiffs filed a motion for reconsideration of the Court's 20 June Order, ECF No. 338. On 21 July 2023, the government requested: (1) clarification as to whether the government could "file a response to plaintiff's pending [M]otion for [R]econsideration" freely or only with leave of court; and (2) an extension of time to file a response, if permitted to do so. Mot. for Clarification & Extension of Time, ECF No. 339. ACORE filed a motion for leave to file an amicus brief on 27 July 2023, ECF No. 340. The government filed a response opposing ACORE's Amicus Motion on 2 August 2023, ECF No. 344. On 16 August 2023, plaintiffs filed an Unopposed Motion for Leave to File a Corrected Version of Plaintiffs' Motion for Limited Reconsideration, ECF No. 347, which the Court granted the same day. Plaintiffs filed their Corrected Motion for Limited Reconsideration on 17 August 2023 ("Pls.' Mot."), ECF No. 350, arguing "[p]ursuant to Rule 54(b) of the Rules of the [United States] Court of Federal Claims [("RCFC")], [p]laintiffs seek limited reconsideration of the Court's decision . . . denying [p]laintiffs' [M]otion for [P]artial [S]ummary [J]udgment . . . insofar as the [decision] makes a determination that neither party sought . . . that, in all circumstances, the value associated with the Section 1603 cash grant[s] . . . cannot be allocated to Class V tangible property, but must instead be treated as a separate intangible asset." Pls.' Mot. at 1. Specifically, plaintiffs request "the Court . . . clarify" the 20 June Order to make clear plaintiffs can argue at trial "under the income method of valuation, the value of tax benefits like the cash grant" may impact "the value and allocated basis of the property to which such benefits relate." *Id.* at 2. The Court held a status conference to discuss the parties' pending motions, as well as ACORE's Amicus Motion, on 29 August 2023. *See* 11Aug. 2023 Order, ECF No. 346.

On 29 August 2023, the Court issued an order granting ACORE's Amicus Motion,

- 3 -

finding the government's request for clarification and extension of time moot, and adopting the parties' proposed briefing schedule for plaintiffs' Motion for Reconsideration. *See* 29 Aug. Order at 2, ECF No. 351. ACORE filed its Amicus Brief on 1 September 2023. *See* ACORE Br., ECF No. 353. On 19 September 2023, the government filed its Response to plaintiff's Motion for Reconsideration and ACORE's Amicus Brief, arguing "[p]laintiffs have not identified any error of fact or law in the Court's" 20 June Order warranting reconsideration. Def.'s Combined Resp. to Pl.'s Mot. for Reconsideration & ACORE's Amicus Br. ("Gov't's Resp.") at 1, ECF No. 357. The government's Response noted, however, the Court's 20 June Order did not "preclude[] plaintiffs from contending [at trial], as a matter of empirical fact, that the fair market values of the components of tangible property at issue are best approximated by taking account of anticipated cashflows, including grants." *Id.* at 4. Plaintiffs filed their Reply on 3 October 2023. Pl.'s Mem. in Support of Pl.'s Mot. for Limited Reconsideration ("Pls.' Reply"), ECF No. 359. The government filed a surreply on 10 October 2023. Def.'s Surreply to Pl.'s Reply Br. ("Gov't's Surreply"), ECF No. 360. The Court held oral argument on plaintiff's Motion on 14 November 2023 in Washington, DC. *See* 26 Oct. 2023 Order, ECF No. 361.

## II. Parties' Arguments[2]

Plaintiffs' Motion for Reconsideration of the Court's 20 June Order argues the Court "went too far" in holding "the value associated with the Section 1603 cash grant[s] cannot be allocated to Class V tangible property but must instead be treated as a separate intangible asset." *See* 29 Aug. Status Conf. Corrected Tr. ("SC Tr.") at 24:9–14, ECF No. 358 (quoting *Alta Wind I Owner Lessor C v. United States*, 166 Fed. Cl. 386, 396 (2023)). Specifically, while they concede the "grant[s] [are] not . . . tangible property," plaintiffs argue "under the income method of valuation, [which plaintiffs contend should be used here,] it is permissible, and, indeed, necessary, to include the value of tax benefits like the grant[s] as part of the fair market value of the property to which such benefits relate." Pls.' Reply at 2; Pls.' Mot. at 1 (emphasis omitted); 14 Nov. 2023 Tr. ("Tr.") at 67:24–68:4 ("THE COURT: . . . [Y]ou agree that . . . grants are not tangible, eligible property to be included in the eligible basis? [PLAINTIFFS]: . . . [T]hey are not separa[te] tangible property."). Plaintiffs continue, "if a tax benefit like the grant is properly included in determining the fair market value of tangible property under [plaintiffs' proffered] income approach, then Section 1060 of the Tax Code mandates an *allocation* to such property based on that full fair market value" because "the allocation to a class is based on the fair market value of the property in that class." Pls.' Mot. at 1, 3. Plaintiffs therefore request the Court "reserve for determination at trial . . . [what valuation method] is appropriately applied in this case to determine the fair market value of the Class V grant-eligible property at the Alta [F]acilities . . . [and] the appropriate treatment of the cash" grants under the Court's selected approach. Pls.' Mot. at 14; Tr. at 40:9–14 ("[PLAINTIFFS]: . . . [The Court's 20 June Order is] a problem to the . . . extent it would preclude [p]laintiffs from making the . . . [income] valuation presentation at trial . . . ."); Tr. at 33:10–19 ("[PLAINTIFFS]: . . . [W]e did not put at issue in our [summary judgment motion any] valuation approach . . . . We have presented [the income

---

[2] In briefing plaintiffs' Motion for Reconsideration, the parties raised several arguments related to valuation methods better suited for trial than the instant Motion. Tr. at 57:24–25:3 ("THE COURT: . . . [J]ust to confirm, the [g]overnment agrees that the question of appropriate valuation method is best suited for trial and has not been decided, correct?" [THE GOVERNMENT]: We agree with that."); Tr. at 86:16–17 ("[PLAINTIFFS]: [V]aluation issues are purely trial issues."). The Court therefore addresses these valuation method arguments in this Opinion and Order only insofar as they are relevant to plaintiffs' current Motion.

valuation method] in the motion for reconsideration . . . to explain how we would propose to value the eligible property at trial.").

The government's Response begins by noting plaintiffs "have not identified any error of fact or law in the Court's analysis" warranting reconsideration. Gov't's Resp. at 1. The government contends plaintiffs "moved for partial summary judgment . . . claiming erroneously that Section 1603 grants 'must be included in the basis' of tangible eligible property," and the "Court resolved th[at] issue" in its 20 June Order. *Id.* (quoting Pls.' Partial MSJ at 1–2). Specifically, according to the government, the Court "determined that premiums paid by plaintiffs (i.e., amounts paid in excess of the sum of the fair market values of identified assets), if associated with the value of anticipated grants, do not constitute eligible tangible property 'for the purpose of calculating the grant.'" *Id.* (quoting *Alta Wind I*, 166 Fed. Cl. at 413). The Court, per the government, therefore "[correctly] resolved how to categorize such premiums . . . as a matter of law" in response to plaintiffs' Motion for Summary Judgment. *Id.* (emphasis omitted). The government recognizes, however, the 20 June Order left "determinations of fair market values—and premium amounts—for trial," meaning at trial plaintiffs can attempt to "demonstrate . . . the value of the anticipated cash grants is fully reflected in the fair market value of the components of tangible eligible property acquired through their windfarm purchases." *Id.* at 3–4. The government clarifies, however, the 20 June Order "appropriately foils plaintiffs' attempt to simply rely on their desired crutch of a *legal* ruling that this must necessarily be the case." *Id.*

Notably, at oral argument, the parties agreed they "are free to offer whatever valuation evidence they want at trial." Tr. 54:12–55:20 ("[THE GOVERNMENT]: . . . If essentially all [the Court is] saying is you didn't rule on valuation methods . . . and the parties are free to offer whatever valuation evidence they want at trial, we're fine with that. . . . THE COURT: . . . [Plaintiffs,] does that statement satisfy your concerns . . . ? [PLAINTIFFS]: . . . Yes, as long as it's clear that . . . [all] valuation methods are free game [for trial,] . . . then, yes, we are in full agreement."). Plaintiffs likewise confirmed they are not arguing grants are separate tangible property and are "not seeking reconsideration of" the "Court's ruling concerning Section 48(b)(3)(B) of the Tax Code." Tr. at 8:20–9:2 ("[PLAINTIFFS]: [Arguing grants are] . . . separate tangible property . . . would be wrong . . . ."); Tr. at 9:13–16. Plaintiffs ultimately concluded the concerns animating their Motion for Reconsideration would "[a]bsolutely" be satisfied by the Court clarifying plaintiffs may argue at trial the Court should use "the income approach" to calculate the fair market value of eligible property, in which plaintiffs contend "anticipated cash flows, including the grants, may [impact] the valuation." Tr. at 51:18–52:2. The government agreed "the Court's [20 June O]rder did not take any position on a valuation method," meaning the Court's 20 June Order need not "be revised," Tr. at 64:10–15, and the parties remain free to "offer whatever valuation evidence they want at trial," Tr. at 55:4–5. Further, the government expressly stated it does not "object to . . . the Court saying [in a clarifying order] the [20 June O]rder" did not "address[] issues of valuation." Tr. at 56:8–13.

In addition to their substantive arguments regarding the Court's 20 June Order, the parties dispute the appropriate rule and standard[3] the Court should use in deciding plaintiff's Motion for

---

[3] At oral argument, however, the government conceded "if Rule 54(b) applies to motions for reconsideration of interlocutory orders," the appropriate standard would be "whatever standards flow from 54(b)." Tr. at 18:4–14.

Reconsideration. Plaintiffs believe "[b]ecause the" Court's 20 June Order "is an interlocutory order, . . . RCFC 54(b) rather than RCFC 59 applies" to plaintiffs' Motion for Reconsideration. Pls.' Mot. at 10. Plaintiffs cite multiple cases from this court and argue "the weight of recent authority is that RCFC 54(b) governs motions to reconsider interlocutory orders," such as a denial of summary judgment. Pls.' Reply at 18. RCFC 59, according to plaintiffs, "governs reconsideration of decisions after [j]udgments." Pls.' Mot. at 10 (quoting *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. C. 524, 530–32 (2021)). Therefore, according to plaintiffs, the Court should grant plaintiffs' Motion under RCFC 54(b)'s "as justice requires" standard. *Id.* at 11 (quoting *Sacramento Grazing Ass'n, Inc. v. United States*, 154 Fed. Cl. 769, 778 (2021)). The government, on the other hand, argues RCFC 59 "does apply" here because it "addresses, in general, motions for reconsideration." Gov't's Resp. at 32–33. The government cites no cases decided under the current version of the RCFC supporting this proposition, however. Tr. at 23:12–20 ("THE COURT: Are there any cases that the [g]overnment has found stating that Rule 59 applies to interlocutory orders? [THE GOVERNMENT]: Well, the one that's coming to mind is the old one . . . the *Shell* case [*Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812 (2000)] . . . . THE COURT: But that was the old rule. [THE GOVERNMENT]: True."). RCFC 54(b), according to the government, does not apply because it "makes no mention of reconsideration." Gov't's Resp. at 33.

### III.   Whether the Court Should Decide Plaintiffs' Motion Under RCFC 54(b) or 59

The government argues while RCFC "54(b) provides that non-final judgments or other orders may be revised . . . prior to final judgment . . . it does not expressly authorize motions for reconsideration." Gov't's Resp. at 33. The government contrasts RCFC 54(b) with RCFC 59, which the government notes is expressly entitled "New Trial[s]; *Reconsideration*; [and] Altering or Amending a Judgment" and discusses motions for such. *Id.* at 32 (first alteration in original) (emphasis added) (quoting RCFC 59). The government also points to the "Committee Notes for the 2002 Revision" to RCFC 59, which it argues indicate both "final and non-final orders . . . can be the subject of motions for reconsideration" under the Rule. *Id.* at 33 (quoting RCFC 59 rules committee's note to 2002 revision). The government fails to proffer a single case decided under the modern version of the RCFC in support of its proposition, however, and conceded at oral argument the timing of RCFC 54(b) "[c]ertainly . . . seems to fit" reconsideration of interlocutory orders. Tr. at 23:25–24:3; *see also* Tr. at 23:12–20. *But see* Pls.' Reply at 18 ("[T]he weight of recent authority is that RCFC 54(b) governs motions to reconsider interlocutory orders.") (citing *E&I Glob.*, 152 Fed. Cl. at 531–32); Pl.'s Resp. at 10–11 (highlighting various cases applying RCFC 54(b) and *E&I Global*'s discussion on the "diversity of opinion in CFC, but [its] conclu[sion] 'RCFC 54(b) governs reconsideration of interlocutory decisions, while RCFC 59 governs reconsideration of decisions after Judgments'" (citing *E&I Glob.*, 152 Fed. Cl. at 530)); *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) ("Because the order granting partial summary judgment was interlocutory, the court should have analyzed the motion for reconsideration under Rule 54(b) instead of Rule 59(e), which applies to final judgments." (footnote omitted)). The government ultimately contends RCFC 59(a), entitled "In General," addresses "motions for reconsideration" generally, both before and after judgment, Gov't's Resp. at 33, but acknowledged at oral argument "there's cases all over the map," meaning at best there is simply "an argument to be made that interlocutory orders are still reviewed by the Court of Federal Claims under Rule 59." Tr. at 20:18–25. Indeed, the government qualified its argument

related to RCFC 54 and 59, recognizing, "[the government] might be on the other side of a reconsideration issue in this case later, so [the government is] not taking an adamant position" on these issues.  Tr. at 21:1–12.  Before turning to the merits of plaintiffs' Motion for Reconsideration, the Court must first determine under which rule plaintiffs' Motion should be decided.  To do so, the Court begins with the text of RCFC 54(b) and 59 and the practices of this and other federal courts.

"The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."  ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012).  "As in all . . . construction cases, we begin with the language" in issue.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  RCFC 54(b) provides, in relevant part:

> *[A]ny order or other decision*, however designated, *that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action* as to any of the claims or parties *and may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b) (emphases added).  In contrast, RCFC 59(a)(1) states:

> The court may, on motion, grant a *new trial or a motion for reconsideration* on all or some of the issues—and to any party—as follows:
>
> (A) *for any reason for which a new trial has heretofore been granted . . .* ;
> (B) *for any reason for which a rehearing has heretofore been granted . . .* ; or
> (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1) (emphases added).  RCFC 59(b)(1) then specifies "[a] *motion for new trial or for reconsideration under RCFC 59(a)(1)(A) or (B) must be filed no later than 28 days after entry of judgment*."  RCFC 59(b)(1) (emphasis added).  The text of RCFC 54(b) lacks this post-judgment language and permits the Court to "revise[] at any time *before the entry of judgment*" any *"order or other decision . . . [that] does not end the action.*"  RCFC 54(b) (emphases added).

The parties agree the Court's 20 June Order is an interlocutory order not entering judgment, and at oral argument the government confirmed the Court should analyze plaintiffs' Motion under the rule the Court determines applies to motions for reconsideration of interlocutory orders.  Tr. at 17:21–18:14.  While the government is correct RCFC 54(b) "does not expressly authorize *motions* for reconsideration," Gov't's Resp. at 33 (emphasis added), RCFC 54(b) expressly permits the Court to reconsider all orders and decisions "[that] do[] not end the action" (i.e., interlocutory orders), RCFC 54(b).  RCFC 59, on the other hand, specifically discusses motions for new trial and reconsideration filed "after the entry of judgment."  RCFC 59(b)(1).  The text of RCFC 59(b), which generally "imposes a 28-day limit '*after the entry of judgment*' to seek reconsideration under RCFC 59(a)(1)(A)," suggests RCFC 59 governs reconsideration of orders entering judgment.  *E&I Glob.*, 152 Fed. Cl. at 530; Pls.'

Reply at 19 (citing RCFC 59(b)(1), (e)).  The government acknowledged at oral argument the timing of RCFC 54(b) "certainly . . . seems to fit," when asked if the Rule is "more appropriate for reconsideration of an interlocutory order" than the timing in RCFC 59.  Tr. at 23:25–24:3.  Further, the "[g]rounds for [n]ew [t]rial or [r]econsideration" described in RCFC 59(a)(1) and enumerated above, particularly the first two (i.e., "an*y reason for which new trial or rehearing has previously been granted*"), appear geared toward post-judgment relief.  *See* RCFC 59(a)(1).  By inviting "motion[s] . . . [for] a new trial or . . . reconsideration on all or some of the issues," RCFC 59(a)(1), the text and timing of RCFC 59 thus appear better suited to post-judgment motions not, as the government contends, "motions for reconsideration [in general]," *see* Gov't's Resp. at 33.  RCFC 54(b), in contrast, explicitly provides for reconsideration of non-final orders before entry of judgment.  *See* RCFC 54(b).  The Court accordingly finds, as between RCFC 54(b) and 59, the plain language of these rules indicates the former applies to motions for reconsideration of interlocutory orders, including plaintiffs' Motion for Reconsideration of the Court's 20 June Order denying plaintiffs' Motion for Partial Summary Judgment.  18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2017) ("[Rule] 54(b) confirms the trial court's necessary authority to correct itself.  It provides that until the court expressly directs entry of final judgment, an order that resolves fewer than all of the claims among all of the parties 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'  *And so the Supreme Court has said[, citing Rule 54(b),] that 'every order short of a final decree is subject to reopening at the discretion of the . . . judge.*'" (emphasis added) (footnote omitted) (first quoting FED. R. CIV. P. 54(b); and then quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983))).[4]

This court's caselaw and guidance from the Supreme Court[5] confirm the Court's interpretation of these Rules.  In *E&I Global*, after briefly surveying the recent decisions of the Court of Federal Claims, this court determined "the language of the Rules," including the post-

---

[4] To the extent the government argues the "Committee Notes for the 2002 Revision[s]" to RCFC 59 indicate the Rule "continues to address both final and non-final orders," Gov't's Resp. at 33 n.19, the text of the Rule, including RCFC 59(a)(1)'s grounds for new trial or reconsideration and the timing of motions under the Rule set forth in RCFC 59(b), suggests it is reserved for motions for reconsideration of orders entering judgment.  *See ITServe All., Inc. v. United States*, 161 Fed. Cl. 276, 284 n.5 (2022) ("The Court . . . considers the text paramount . . . .").  Further, the government acknowledged at oral argument interpreting RCFC 59 as described in the Committee Notes for the 2002 Revisions requires a "strained reading" of the text of RCFC 59.  Tr. at 26:14.

[5] The parties do not cite, and the Court has not identified, a Supreme Court or Federal Circuit case directly on point.  The Supreme Court has, however, acknowledged, "every order short of a final decree is subject to reopening at the discretion of the . . . judge" pursuant to Rule 54(b).  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing FED. R. CIV. P. 54(b)).  While not dispositive of the dispute between the parties here, this case supports the Court's decision to analyze plaintiffs' Motion for Reconsideration under RCFC 54(b).  *See* RCFC rules committee's note to 2002 revision ("[I]nterpretation of the [RCFC] will be guided by case law . . . [interpreting] the Federal Rules of Civil Procedure.").  The decisions of other federal courts of appeals, while not binding on this court, likewise support the Court's determination.  *See, e.g.*, *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("Compared to motions to reconsider *final* judgments pursuant to [Rule 59], Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light."); *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (finding that since judgment had not been entered with respect to an order denying fees, for which plaintiff moved for reconsideration, that "decision was interlocutory and thus the reconsideration motion should have been treated as filed under Rule 54(b)").  Indeed, at oral argument, the government confirmed "generally speaking . . . 54(b) would probably apply" to motions for reconsideration of interlocutory orders in federal district courts.  Tr. at 21:19–22:2.

judgment timing language in RCFC 59, indicates "RCFC 54(b) applies to reconsideration of interlocutory decisions, while the more rigorous RCFC 59(a) & (e) apply to reconsideration of matters for which [j]udgment has been entered." *E&I Glob., Inc.*, 152 Fed. Cl. at 530; *accord Capstone Assoc. Servs., Ltd. v. United States*, 2023 WL 5624480, at *3 (Fed Cl. Aug. 31, 2023) ("RCFC54(b) [applies], . . . since the sanctions order at issue does not adjudicate the pending claim and the merits of the action remain to be addressed."). The *E&I Global* court therefore reviewed the plaintiff's motion for reconsideration under RCFC 54(b). *E&I Glob.*, 152 Fed. Cl. at 533. A decade earlier, in *L-3 Communications*, this court similarly held in a bid protest, "because [d]efendant and [i]ntervenor seek reconsideration . . . of an interlocutory decision [granting plaintiff's motion to supplement the administrative record,] Rule 54(b) . . . governs instead of Rule 59(e) or 60, which address reconsideration of final judgments." *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011). Further, *BHB Limited Partnership*, which this court has previously cited as a counterexample to the trend among Court of Federal Claims judges in analyzing motions for reconsideration of interlocutory orders under RCFC 54(b), supports the Court's determination here. *See E&I Glob.*, 152 Fed. Cl. at 530 (noting the *BHB* court "denied a motion to reconsider a previous interlocutory order on the basis it was improperly brought under RCFC 54(b)" (citing *BHB Ltd. P'ship v. United States*, 152 Fed. Cl. 215, 218 (2021))). In *BHB*, this court determined "RCFC 54(b) [only] pertains to matters in cases in which partial judgments either have been, or could be, entered." *BHB*, 152 Fed. Cl. at 217. The *BHB* court therefore declined to reconsider its denial of a motion to supplement the administrative record under RCFC 54(b). *Id.* at 218. Here, where the Court could have—but did not—enter partial judgment in ruling on plaintiffs' Motion for Partial Summary Judgment, RCFC 54(b) is applicable, even under the *BHB* court's narrow application of the Rule. The decisions of this court therefore support the Court's conclusion plaintiffs' Motion for Reconsideration should be analyzed under RCFC 54(b). *See E&I Glob.*, 152 Fed. Cl. at 530; *see also Moses*, 460 U.S. at 12 (acknowledging "every order short of a final decree is subject to reopening at the discretion of the . . . judge" pursuant to Rule 54(b) of the Federal Rules of Civil Procedure).

The Court accordingly applies the "as justice requires" standard set forth by this court for reconsideration of interlocutory orders under RCFC 54(b) to plaintiffs' Motion for Reconsideration. *Sacramento Grazing Ass'n, Inc. v. United States*, 154 Fed. Cl. 769, 778 (2021) ("After careful review of case precedent and the parties' arguments, the Court . . . finds that the applicable standard of review under RCFC 54(b) is simply 'as justice requires.'" (citing *E&I Glob.*, 152 Fed. Cl. at 533)). At oral argument, the government effectively conceded RCFC 54(b) may reasonably apply, agreed many "[j]udges of this court . . . seem to [be] go[ing] that way," and ultimately acknowledged the "as justice requires" test set forth in *Sacramento Grazing* is "the most literal and straightforward [application of the] language of RCFC 54(b)." Tr. at 23:12–24, 30:25–31:7; Tr. at 21:1–12 ("THE COURT: But has the government argued the opposite [position in other cases] when plaintiffs have argued that Rule 59 would apply? Because I think I might have just had that last week. [THE GOVERNMENT]: Well, it's entirely possible that—you know, how many attorneys in DOJ appear before this Court? And, you know, we might be on the other side of a reconsideration issue in this case later, so I'm not taking an adamant position. I'm just saying I think there is some historical reason why there have been decisions over time of interlocutory orders . . . ."). To the extent the government attempted to walk back its concession regarding the applicability of the "as justice requires"

standard by citing *Wolfchild*'s discussion of the law of the case doctrine, *see* Tr. at 29:19–30:22 (citing *Wolfchild v. United States*, 68 Fed. Cl. 779, 785 (2005)), plaintiffs are correct the Federal Circuit has held "[l]aw of the case . . . merely requires a trial court to follow the rulings of an appellate court," meaning the doctrine is inapplicable to the present Motion for Reconsideration. *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991) (first citing *Holcomb v. United States*, 622 F.2d 937, 940 (7th Cir. 1980); and then citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)) ("[Law of the case] does *not* constrain the trial court . . . to adhere to its own previous rulings if they have not been adopted . . . by the appellate court[] . . . ."); Tr. at 31:20–32:12. The "broad[] flexibility to revise interlocutory orders" under the "as justice requires" standard reflects the Court's "inherent power . . . to afford . . . relief from interlocutory" decisions. *E&I Glob.*, 152 Fed. Cl. at 532 (first quoting *Carlson v. Bos. Sci. Corp.*, 856 F3d 320, 325 (4th Cir. 2017); and then quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985)); *see also Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 ("[Even under Rule 59,] [t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court."). This flexibility is not, however, "an invitation for litigants to treat interlocutory decisions 'as mere first drafts' . . . [because] RCFC 54(b) afford[s] judges of the Court of Federal Claims with great[] discretion to deny motions for reconsideration that offer no good reasons to alter interlocutory decisions." *E&I Glob.*, 152 Fed. Cl. at 533 (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). The Court next analyzes plaintiffs' Motion pursuant to RCFC 54(b)'s "as justice requires" standard.

### IV. Whether the Court Should Grant Plaintiffs' Motion for Reconsideration

During oral argument, plaintiffs expressly stated the Court clarifying the parties are "free to argue that the income [or any other] valuation method should be used in order to value the tangible property" at trial would "resolve[] the issue" underlying their Motion for Reconsideration. Tr. at 65:4–13, 50:24–51:17; Tr. at 54:12–57:11 ("[THE GOVERNMENT]: . . . If essentially all you're saying is [the Court] didn't rule on valuation methods . . . and the parties are free to offer whatever valuation evidence they want at trial, we're fine with that. . . . [PLAINTIFFS]: . . . I agree, those are issues for trial."). In response, the government agreed "the Court's [20 June O]rder did not take any position on a valuation method," meaning plaintiffs are "free to argue [at trial] that the best way to value the tangible property is the income method and that the income method . . . should take into account . . . anticipated cash flows from the grant[s] . . . ." Tr. at 64:10–12, 65:16–23; Tr. at 13:21–14:3 ("[THE GOVERNMENT]: Well, so, it's a bit nuanced. They are free to make that argument at trial in our view. Nothing in your order precludes them from advancing an income method of valuation. Nothing in your order precludes them from saying, in this instance, empirically, it is correct to add the tax benefits in and come up with, you know, some very large value for the tangible property."). Thus, plaintiffs now simply request the Court clarify the Court's 20 June Order did not prohibit the parties from arguing in favor of any valuation method, including "the income valuation method[,] . . . to value the tangible property" at trial. *See* Tr. at 65:4–13, 55:4–5. They specifically request the Court clarify two sentences on the final page of the 20 June Order: (1) "[T]he Court cannot consider a premium associated with the anticipated value of a grant to be eligible 'tangible property' for the purpose of calculating the grant[;]" and (2) "The portion of the purchase price [of the Alta Facilities] pertaining to consideration for the anticipated Section 1603 cash grants is grant-ineligible intangible property under Class VI (contract rights) or Class

VII (goodwill or going concern value)." *Alta Wind I Owner Lessor C v. United States*, 166 Fed. Cl. 386, 413 (2023), *discussed in* Tr. 38:9–15, 49:14–52:2.  The government, agreeing these sentences—and the 20 June Order as a whole—are silent on valuation method, consented to the Court clarifying "the income method is not precluded" from being discussed by plaintiffs at trial insofar as plaintiffs argue it should be used to calculate the value of eligible tangible property, just as the government is free to argue in favor of its preferred valuation method.  *See* Tr. at 48:24–49:6, 55:2–20; Tr. at 46:23–24 ("[THE GOVERNMENT]: . . . [T]he [Court's 20 June O]rder does not address matters of valuation.").

Turning to caselaw, plaintiffs cite two cases they allege support the instant Motion—*Van Duzer* and *Utilicorp*.  In *Van Duzer*, as acknowledged by plaintiffs at oral argument, the Tax Court's primary inquiry was "[w]hether the purchase prices of two windfarms . . . were in excess of their respective fair market values."  *Van Duzer v. Comm'r*, 61 T.C.M. (CCH) 2791, 2792 (1991); Tr. at 68:8–13.  This is unlike the present case, where the Court's ultimate question is the appropriate value of cash grants owed to plaintiffs.  Plaintiffs also agreed at oral argument the Tax Court in *Van Duzer* set forth "the general rule that basis is equal to cost [or purchase price]."  *Van Duzer*, 61 T.C.M. (CCH) at 2799; Tr. at 68:25–69:3.  On the other hand, plaintiffs continue to dispute whether the following statement by the Tax Court warrants the exclusion of grant value from the calculation of the fair market value of the eligible tangible property in this case:

> [F]avorable tax incentives . . . should not be considered as a "peculiar circumstance" so as to reduce . . . bases in . . . windfarms, provided that these tax incentives did not cause [the purchaser] to pay more for the windfarms than their respective fair market values.

*Van Duzer*, 61 T.C.M. (CCH) at 2800 (quoting *Bryant v. Comm'r*, 790 F.2d 1463, 1466 (9th Cir. 1986)); Tr. at 69:11–71:1; Gov't's Resp. at 26 ("The [Tax C]ourt nonetheless still articulated the principle that tax incentives could only be considered in determining the taxpayer's basis in the windfarms, 'provided that these tax incentives did not cause petitioner to pay more . . . [than] fair market value[].'" (quoting *Van Duzer*, 61 T.C.M. (CCH) at 2800)).  Plaintiffs concede, however, the *Van Duzer* court's discussion of the various valuation methods "both parties presented . . . [through] expert witnesses," *Van Duzer* 61 T.C.M. (CCH) at 2801, did not endorse any individual approach, including plaintiffs' preferred income method.  Tr. at 71:23–25 ("[PLAINTIFFS]: . . . Now, [the Court is] correct, the [Tax Court] does not expressly say 'I'm endorsing the [p]etitioner's expert's valuation . . . .'"); Tr. at 72:25–73:3.  Turning to the second case, plaintiffs likewise acknowledged at oral argument *Utilicorp* does not support the instant Motion or plaintiffs' planned valuation method argument, as the case's discussion of turnkey fees and developer premiums is irrelevant to plaintiffs' preferred income valuation method.  Tr. at 82:11–83:6 (citing *Uliticorp United, Inc. v. Comm'r*, 73 T.C.M. (CCH) 1835 (1997)).  As applicable to the current issue, plaintiffs therefore agree the primary takeaway from both *Van Duzer* and *Utilicorp* is simply:  courts often consider the testimony of experts in determining the fair market value of property.  Tr. at 77:10–18 ("THE COURT: . . . On that last point, [plaintiff], if the *Van Duzer* take-away is that the Court should consider all expert testimony related to valuation methods, then this Court's Order from June is still fully correct insofar as we agree that there's no impact there on what Plaintiffs can present in expert testimony related to valuation methods, correct?  [PLAINTIFFS]: I think that's correct, Your Honor."); Tr. at 84:18–

86:4; *Utilicorp*, 73 T.C.M. (CCH) at 1839–41.  The parties thus agree these cases do not impact the Court's 20 June Order or support plaintiffs' instant Motion for Reconsideration.

In summary, the Court concurs with the parties its 20 June Order did not address valuation methods, meaning the parties are free to offer any valuation evidence and argue in favor of any valuation method at trial.  *See Alta Wind I*, 166 Fed. Cl. 386.  The Court's 20 June Order did, however, hold—as acknowledged by plaintiffs—grants are not separate eligible tangible property.  *Id.* at 410 ("None of the authorities raised by plaintiffs allow the Court to consider a grant to be eligible 'tangible property' for the purpose of calculating itself." (citations omitted)); Tr. at 67:24–68:4 ("THE COURT:  . . . [Y]ou agree that . . . grants are not tangible, eligible property to be included in the eligible basis?  [PLAINTIFFS]:  . . . [T]hey are not separa[te] tangible property.").  Further, while plaintiffs are permitted to argue in favor of any valuation method at trial, including one allegedly necessitating treating "the cash grant value [as] . . . one cash inflow that goes into the discounted cash flow analysis" of the eligible tangible property, *see* Tr. at 15:5–20, the 20 June Order prohibits plaintiffs from treating cash grants as "Class V tangible property" inherently "part of the basis of the windfarm[s]."  *Alta Wind I*, 166 Fed. Cl. at 413.  As the parties agreed at oral argument the 20 June Order does not preclude them from making factual arguments related to their preferred method for calculating the fair market value of eligible tangible property at trial, and plaintiffs stated this clarification resolves the issues underlying their Motion for Reconsideration, justice does not require the Court to reconsider its 20 June Order.  *See Sacramento Grazing Ass'n, Inc. v. United States*, 154 Fed. Cl. 779, 778 (2021); *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 533 (2021) (citing *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)); Tr. at 65:4–13, 64:10–12, 65:16–23.

V.     **Conclusion**

For the foregoing reasons, the Court **FINDS as MOOT** plaintiffs' Corrected Motion for Limited Reconsideration, ECF No. 350, and plaintiffs' original Motion for Limited Reconsideration, ECF No. 338.  The parties **SHALL FILE** a joint status report on or before 3 January 2024 updating the Court on the status of any outstanding expert discovery disputes.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge